THE BURGESS BROS. CO., INC., Plaintiff, *v.* FREDERICK STEWART, LOUIS JAFFA, WALTER ROSS et al., Defendants.

(Supreme Court, Kings Special Term, March, 1921.)

Injunctions — when will be granted — labor unions — evidence — ships and shipping — conspiracy — United States Shipping Act (39 U. S. Stat. at Large, 728), §§ 14, 16 — United States Criminal Code, § 37.

In an action by a large exporter of lumber at New York to restrain a course of conduct which, if persisted in, would inevitably bring financial ruin upon the plaintiff, some of the defendants, representatives of a labor union, openly stated that there was an avowed purpose on its part to force plaintiff to unionize its plant. This plan could not effectually be carried out without the cooperation of such of the defendants as were the owners or agents of steamship companies which under section 14 of the United States Shipping Act (39 U. S. Stat. at Large, 728), are required to serve the public without discrimination. While there was no proof of an agreement between the representatives of the steamship companies and the union to refuse plaintiff's product, there was sufficient evidence of their approval of, connivance at and sanctioning of the acts of the employees as to amount to an overt act on the part of the steamship companies. *Held,* that the various acts of the defendants alleged in the complaint amounted in law to a conspiracy.   (P. 678.)

The concerted action of the representatives of the steamship companies, who evinced no desire to receive or handle plaintiff's lumber, and their employees, none of whom did they discharge or reprimand for discriminating against plaintiff, but openly sanctioned such conduct, leads to the accomplishment of an unlawful act; *i. e.,* that of violating both the United States Shipping Act and section 37 of the United States Criminal Code. (Pp. 678, 679.)

It being apparent that plaintiff will suffer irreparable damage, for which it has no proper or adequate remedy at law, an injunction broad enough to include agents, stevedores, receiving clerks, etc., will be granted against all of the defendants under section 16 of said Shipping Act.   (P. 682.)

Supreme Court, March, 1921.    [Vol. 114.

Action for an injunction.

Austin, McLanahan & Merritt (Walter Gordon Merritt, of counsel), for plaintiff.

Kirlin, Woolsey, Campbell, Hickox & Keating (Charles R. Hickox and Albert H. Ely, Jr., of counsel), for defendants James F. Stuart, sued as " Frederick Stewart," Louis Jaffa, Walter Ross, James Meagher, Louis L. LeFurge, sued. as " Lewis L. LeFurge," George J. Clark, Thomas A. Lilly, P. Kleppe & Company, Inc., doing business as North and South Atlantic Line, Ltd., Skeffington S. Norton, Joseph T. Lilly, John D. O'Reilly and John J. Farrell, copartners, doing business under the name of Norton, Lilly & Company, individually and as representatives of The American and Australian Steamship Line and American Mediterranean Levant Line, Robert P. Houston, doing business under the name of R. P. Houston & Company, Prince Line, Ltd., Furness, Withy & Company, Ltd., and United Port Service Co.

Mann Trice (James F. O'Neill, of counsel), for defendants John J. McLaughlin, Frank M. Henderson, individually and as president of Steamship Clerks' Union of Brooklyn and Staten Island, Local 975, I. L. A.; George Campbell, individually and as business agent of said Local 975; John Quinn, individually and as president of Truck Drivers and Chauffeurs Local Union 807 of the International Brotherhood of Teamsters, Chauffeurs, Stablemen and Helpers; William O'Neill and William Brown, both individually and as agents of said Local Union 807; Edward McCaffrey, individually and as president, and Joseph Ryan, individually and as secretary of the Transportation Trades Council of the Port of New York and vicinity.

William W. Corlett, for defendants United States Steel Products Company, John W. Ryan and Frank C. North.

Lord, Day & Lord, for defendant Cunard Steamship Company, Ltd.

Baldwin & Curtis, for defendant Overseas Shipping Company.

Callaghan, J. The plaintiff, a large exporter of lumber, has brought this action to restrain permanently the defendants from a course of conduct which it is claimed, if persisted in, must inevitably bring financial ruin upon the plaintiff.

The defendants here are steamship companies (operating steamships between the port of New York and various ports of the world) and some of their employees, agents, brokers and stevedores, and the officers and agents of the International Longshoremen's Union, Local 975, International Brotherhood of Teamsters, Local Union 807, The Greater New York Lumber Handlers' Union, 17122, and the Transportation Trades Council of the Port of New York.

There is little dispute about the facts. The plaintiff was an employer of non-union men. A demand was made upon it by the Teamsters' Union and the Lumber Handlers' Union to unionize its plant. This it refused to do, although it made no objection to its employees becoming members of the union. Being unable to induce the plaintiff to employ exclusively men who were members of the union, various of the defendants entered upon a plan to force a compliance with the demands of the union. The officers of the union, with commendable frankness, stated at the trial that it was their determination to " fight to a finish," and that this was a case of the " survival of the fit-

test,'' which could only mean that it was the determination of the union to bring financial ruin upon plaintiff if it did not submit to the demands of the union.

The proof here shows that all the longshoremen in the port of New York, including checkers, weighers and handlers of freight, are members of the International Longshoremen's Association, and, although this association had made no demands upon the plaintiff, its members were directed to refuse to receive or handle any of plaintiff's lumber, unless plaintiff's trucks were driven by members of the Teamsters' Union. The result was that plaintiff was unable to ship any of its products. All the employees of the stevedores and of the steamship companies engaged in receiving and handling lumber were members of the Longshoremen's Union. Their action in refusing plaintiff's shipments was, in each instance, immediately called to the attention of the representatives of the owners of the steamships. There was no question of available space on the various steamships, as plaintiff had invariably procured from the representatives of the steamships reservations of space and directions to the receiving clerks to accept the plaintiff's lumber for shipment; and although some of the defendants attempted to show that shipments were refused because of lack of space, it is apparent that this was purely a subterfuge for the purpose of evading responsibility for what they conceived to be an illegal course of conduct.

The defendant the Transportation Trades Council is an advisory body, having no power to call strikes, but it acts in an advisory capacity and was charged with the duty of seeing that the various labor locals co-ordinated to force recalcitrant employers to meet the demands of the union. Delegates to this body

come from the various locals in the port of New York. This organization passed a resolution which provided that none of the local unions should handle non-union goods or any goods transported by firms, corporations or individuals who refused to employ union men, or should contract to transport their goods at union terms.

The conditions prevailing in the port of New York at the time in question were and are a matter of common knowledge. There was a great shortage of labor, due to the then existing abnormal conditions. Steamship owners were at the mercy of the labor unions, and they felt, no doubt, that it was more profitable to tolerate, and, in fact, to openly countenance the unjust and illegal acts of the unions, than to discourage those of their employees who refused to handle plaintiff's lumber.

It would be strange, indeed, if the law is so impotent as to furnish no relief from a condition forced upon it, which, if continued, must inevitably bring financial ruin upon the plaintiff. Plaintiff has been guilty of no wrongdoing, but is engaged in a lawful pursuit. The plaintiff is not required to await the result of criminal proceedings, and allow its business to be ruined in the meantime, but may proceed by civil action to prevent the continuance of a wrong when the wrong is the result of a conspiracy in violation of the criminal law. *Rourke* v. *Elk Drug Co.*, 75 App. Div. 145; *Kellogg* v. *Sowerby*, 190 N. Y. 370. The conduct of those engaged in this unlawful discrimination has not and cannot be justified.

It is the purest sort of sophistry to argue that a decision here adverse to the labor unions is a violation of the Federal Constitution in that it imposes involuntary servitude upon the employees of various of the defendants. There is no suggestion that any of

the employees are compelled to work for these defendants. Their right to work for whom they please, and when they please, is inalienable, and any judgment of the court to the contrary could not stand; but it would be absurd to permit the employees to continue on a course of conduct which makes the steamship owners guilty of a violation of the statute in discriminating unlawfully against the shippers of goods. If such a course of conduct is countenanced it must, if carried to a logical conclusion, result in destroying all who do not employ union men, coercion greater, in fact, than that of which some of the defendants are now complaining.

The various acts of the defendants amount, in law, to a conspiracy against the plaintiff. The approved definition of a conspiracy is found in *Pettibone* v. *United States,* 148 U. S. 197, and approved in *Duplex Printing Press Co.* v. *Deering,* U. S. Supreme Court, Advance Opinions, February 1, 1921, p. 176. It is: " A combination of two or more persons by concerted action to accomplish a criminal or unlawful purpose or some purpose not in itself criminal or unlawful, by criminal or unlawful means."

Those defendants who were owners or agents of steamships were required to serve the public without discrimination, and if their employees continued voluntarily in their service the same obligation rested also upon the employees. This record is barren of any evidence which would indicate a desire on the part of the steamships' representatives to receive or handle plaintiff's lumber. They did not discharge or reprimand any of their employees for discriminating against plaintiff but openly sanctioned such conduct and connived at it, on the theory no doubt that it was better that plaintiff should suffer than that the movement of freight in the port be " tied up." The con-

certed action both of the employer and the employees leads to the accomplishment of an unlawful act, *i. e.,* that of violating both the United States Shipping Act (39 U. S. Stat. at Large, 728) and the United States Criminal Code, section 37. The Shipping Act, in so far as it is applicable to the situation, is as follows:

" Sec. 14. That no common carrier by water shall * * * unfairly treat or unjustly discriminate against any shipper in the matter of (a) cargo space accommodations or other facilities, due regard being had for the proper loading of the vessel and the available tonnage; (b) the loading and landing of freight in proper condition; or (c) the adjustment and settlement of claims. Any carrier who violates any provision of this section shall be guilty of a misdemeanor, punishable by a fine of not more than $25,000 for each offence.

" Sec. 16. That it shall be unlawful for any common carrier by water, or other persons subject to this Act, either alone or in conjunction with any other person, directly or indirectly —

" *First.* * * * to subject any particular person, locality, or description of traffic to any undue or unreasonable prejudice or disadvantage in any respect whatsoever.

" *Second.* * * *

" Sec. 17. * * * Every such carrier and every other person subject to this Act shall establish, observe, and enforce just and reasonable regulations and practices relating to and connected with the receiving, handling, storing, or delivering of property."

This statute is declaratory of the common law, which placed an obligation upon the common carrier to serve the public without discrimination. A carrier cannot avoid this responsibility. It is no answer to a charge of misconduct amounting to a discrimination to say that the unlawful act is that of an employee. It was

the duty of the employers to find those who would handle all goods offered for shipment, and if those employed to do that work refused there could be no other alternative but to discharge such employee even though it may have led to a great financial loss to the steamship owners and inconvenience to the public. The employee is the *alter ego* of the principal and any act of the employee in violation of the common law, or of the statute, is the act of the principal, for which the principal is liable.

We have, therefore, a situation where the representatives of the union openly state that there was an avowed purpose on the part of the union to force plaintiff to submit to its demands or suffer the penalty of financial ruin. The price demanded by the union was that all of plaintiff's employees be members of the union. This plan could not be effectually carried out without the co-operation of the steamships' representatives. A defiance by them of the union would have frustrated the plan, and while it has not been shown here that there was an agreement between the representatives of the steamship companies and the union to refuse plaintiff's products, there is sufficient evidence of their approval of, the connivance at, and the sanctioning of, the acts of the employees as to amount to an overt act on the part of the steamship companies. For these reasons they may be properly regarded as a party to the unlawful combination.

The views herein expressed do not conflict with the decisions in the *Reardon* cases (*Reardon, Inc., v. Caton,* 189 App. Div. 501; *Reardon v. International Mercantile Marine Co.,* Id. 515). In the first of these cases neither the employers, common carriers nor shippers of freight were made parties; and in the second of these cases there was no suggestion that a conspiracy between the common carriers or the employees was

pleaded, and the labor unions were not parties defendant.

I do not regard what has been said in the *Reardon* cases as controlling here. The most that can be claimed for them is that, upon the facts presented, the court held that the injunction granted at Special Term was improper. But a careful analysis of all the opinions written in those cases will show that the majority of the court agrees with the contentions herein made. In *Reardon, Inc.,* v. *Caton, supra,* no common carrier was joined as party defendant. The question of an unlawful discrimination was not, therefore, before the court. Presiding Justice Jenks and Justice Rich concurred in the prevailing opinion, while Justices Putnam and Mills dissented. In *Reardon* v. *International Mercantile Marine, supra,* however, Mr. Justice Rich was of the opinion that the carrier should have received the freight when offered, and, therefore, concurred in the dissenting opinion of Mr. Justice Mills, while Mr. Justice Putnam concurred in the reversal solely because there had been a reversal in *Reardon, Inc.,* v. *Caton,* and, inasmuch as the actions were closely related, he held that consistency required a reversal in the latter case. The reasoning of the majority of the court leads to the conclusion that had the unions and common carriers been joined as parties defendant, as in this case, the court would, upon the facts shown in the two cases, have sustained the injunction granted at Special Term.

Some of the defendants here in their briefs admit that the facts in this case are "almost exactly similar" to the facts in *Buyer* v. *Guillan.* I concede the similarity in facts. The lower court in that case refused an injunction, but since the preparation of the briefs before me, the Circuit Court of Appeals has unanimously reversed the decision of the lower court and directed that an injunction issue.

Supreme Court, March, 1921. [Vol. 114.

It is apparent that plaintiff will suffer irreparable damage for which it has no proper or adequate remedy at law, unless an injunction issue, and as the Shipping Act (§ 16) is broad enough to include agents, stevedores, receiving clerks, etc., the injunction will run against all the defendants.

Ordered accordingly.