NORFOLK SOUTHERN BUS CORPORATION, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 91118.   Promulgated February 21, 1939.

*O. R. Folsom-Jones, Esq.,* for the petitioner.
*F. S. Gettle, Esq.,* for the respondent.

---

[5] *Wolfe* v. *McCaughn,* 5 Fed. Supp. 407; cf. *Koehler* v. *Lewellyn,* 44 Fed. (2d) 654 (D. C.); *Johnson* v. *United States,* 8 Fed. Supp. 842.

OPINION.

Mellott: Section 141 of the Revenue Act of 1934 is applicable. It provides that an affiliated group of corporations shall, subject to the provisions of the section, have the privilege of making a consolidated return for the taxable year in lieu of separate returns. An "affiliated group" is defined as "one or more chains of corporations connected through stock ownership with a common parent corporation" if three conditions are present.[1] The parties agree that the requirements of (1) and (2) are met, all of the outstanding stock of petitioner being owned by the railroad company, so the sole issue is whether or not the conditions of (3) (A) or (B) exist. No claim is made under (B), so the issue is narrowed to the question "Was petitioner, during the taxable year, a corporation whose principal business was that of a common carrier by railroad?" If so, then it was entitled to file a consolidated return with its parent and there is no deficiency in tax; if not, then it is taxable upon its net income of $16,619.92 and the deficiency determined by the respondent should be approved.

Petitioner has asked us to find as a fact that its principal business was that of a common carrier by railroad. We have declined to make such finding, preferring to set out the facts shown by the evidence, and from them to determine, as a question of law, the issue raised. That, we think, is the proper approach to the question.

Petitioner contends that inasmuch as its operation of busses and trucks was intended to, and did, protect, supplement, feed, and coordinate the railroad service, this fact establishes that its principal business was that of a common carrier by railroad. Respondent concedes that petitioner was organized for the purpose of protecting,

[1] SEC. 141. CONSOLIDATED RETURNS OF RAILROAD CORPORATIONS.

\* \* \* \* \* \* \*

(d) Definition of "Affiliated Group".—As used in this section an "affiliated group" means one or more chains of corporations connected through stock ownership with a common parent corporation if—

(1) At least 95 per centum of the stock of each of the corporations, (except the common parent corporation) is owned directly by one or more of the other corporations; and

(2) The common parent corporation owns directly at least 95 per centum of the stock of at least one of the other corporations; and

(3) Each of the corporations is either (A) a corporation whose principal business is that of a common carrier by railroad or (B) a corporation the assets of which consist principally of stock in such corporations and which does not itself operate a business other than that of a common carrier by railroad. For the purpose of determining whether the principal business of a corporation is that of a common carrier by railroad, if a common carrier by railroad has leased its railroad properties and such properties are operated as such by another common carrier by railroad, the business of receiving rents for such railroad properties shall be considered as the business of a common carrier by railroad.

supplementing, and feeding the business of the railroad and that the two are closely coordinated in service, policy, management, and personnel. He denies, however, that these facts bring it within section 141 (d) (3) (A), *supra*.

Petitioner's certificate of incorporation empowers it to engage "in the business of a common carrier of passengers and freight by motor bus vehicle or vehicles * * * on or over the public highways of the State of Virginia." It further provides that petitioner "shall have all other powers * * * conferred upon public service corporations, other than railroad corporations." Any attempt by petitioner to engage in the business of a common carrier by railroad or any other business not specifically conferred upon it by its articles of incorporation would probably be beyond the sphere of its corporate powers and *ultra vires*. *Central Transportation Co.* v. *Pullman's Palace Car Co.*, 139 U. S. 24. But we do not choose to decide the issue merely on this ground; for, as petitioner points out, the statute merely requires that the affiliating corporation be "a corporation whose principal business is that of a common carrier by railroad." It may be, therefore—though we refrain from making any such holding—that it is more important to consider the powers actually exercised and the business actually conducted than it is to scrutinize too carefully the powers conferred by the certificate of incorporation.

Petitioner argues that if Congress had meant that only railroad corporations could be affiliated it would have said so in simple and direct language; that in any event it comes within the wording of the statute because its business was essentially that of a common carrier by railroad; and that if any doubt exists as to whether or not it is such a corporation as Congress intended to include in the legislation, such doubt may be and is dispelled when the legislative history and Congressional debates are considered in connection with the enactment of the section under consideration. It cites the language of the Supreme Court in *Wabash Railroad Co.* v. *Pearce*, 192 U. S. 179, 186, that "In order to fully understand the force and scope of any statute or body of statutes we must have regard to the conditions and circumstances for which the legislation was intended and under which it is to become operative", and other cases applying the same principle of law.

It is doubtful that there is such ambiguity in the language of the statute under consideration that the legislative history in connection with its enactment should be considered; for "Unless the contrary appears, statutory words are presumed to be used in their ordinary and usual sense, and with the meaning commonly attributable to them." *DeGanay* v. *Lederer*, 250 U. S. 376. Cf. *Crooks* v. *Harrelson*, 282

U. S. 55, and cases cited. But notwithstanding the doubt which we have, careful consideration has been given to such history. It will be referred to briefly.

When the Revenue Act of 1934 was reported out by the House Ways and Means Committee the provision generally for affiliated companies to file consolidated returns was retained.[2] In its report the Committee stated that if consolidated returns were abolished it "would be especially burdensome to many corporations such as the railroads which are frequently obliged to maintain separate corporate structures in the several states in which they operate, although for all ordinary business and accounting purposes the subsidiaries form a single operating system."[3] The Senate Finance Committee, in its report,[4] concurred in the conclusions of the House Committee with regard to consolidated returns. On the floor of the Senate an amendment was offered and adopted to strike out section 141 because of the unfair advantage which certain large holding companies had obtained in the past from the filing of consolidated returns.[5] The act was submitted

[2] The Revenue Act of 1934 (H. R. 7835, Rept. No. 558).

[3] Report of the House Ways and Means Committee, 73d Cong., 2d sess., Rept. No. 704, at page 17.

[4] Report of the Senate Committee on Finance, 73d Cong., 2d sess., Rept. No. 558.

[5] On April 12, 1934, in the Senate, Senator Borah moved to strike out section 141 of the bill because in his opinion consolidated returns giving the advantage to the large holding companies was a great disadvantage to all independent corporations paying taxes and pointed out that it puts many independent corporations under a handicap which in some instances makes it impossible to continue in business. (Congressional Record, Vol. 78, Apr. 12, 1934, page 6666.) He pointed out the advantage that the aviation holding companies and public utility holding companies had by virtue of the consolidated returns and saw no reason in justice and practice why these corporations should not make separate returns and then all corporations would be on the same basis and each dealt with upon a fair principle. Senator Harrison at page 6667, pointed out that the Committee thought that it was necessary in some cases that consolidated returns be filed and stated:

> * * * It was pointed out by the railroads, for instance, that it was necessary for them to file consolidated returns, and it must not be forgotten by the Senate that certain states have laws respecting the doing of business by corporations, which make it necessary that a corporation doing business in a State must organize under its laws.

Senator Couzens (at page 6667) agreed that there were some reasons for a consolidated return in the cases referred to by Senator Harrison but that the bill in its then form permitted the filing of consolidated returns for other than allied industries and thereby promoted an unfair competitive condition and stated that if Senator Borah's amendment was agreed to a provision could be drafted in conference which would exempt those corporations which were engaged in noncompetitive business and which are required by the statutes of the states to take out separate articles of incorporation. On the second day of the debate on Senator Borah's amendment (while the Senate had under consideration Senator Hasting's motion to reconsider the vote by which the Borah amendment had been adopted), Senator Gore cited the example of the Southern Pacific Railroad as the type of case for which special provision permitting consolidated returns should be made, the reason being the requirement of State laws that the Southern Pacific incorporate separately in many States. Senator Gore stated (at page 6761, Congressional Record, Vol. 78, Apr. 13, 1934) as follows:

> * * * I agree with the Senator about the vertical, integrated concerns where one is pyramided upon the other. I think they ought to be disintegrated so far as taxation is concerned. On the other hand, it does seem to me that the railroad situation might constitute an exception.

Sen. Borah agreed that the matter should go to conference and expressed himself as not opposed to certain exceptions to the abolition of consolidated returns. (page 6762)

to the Conference Committee, where consolidated returns in general were abolished and the present section 141 inserted, providing for the filing of consolidated returns by corporations "whose principal business is that of a common carrier by railroad."[6]

This, in brief, is the legislative history relied upon by petitioner as supporting its contention that Congress intended to permit a bus or truck company to file a consolidated return of income with a railroad company owning 95 per centum of its stock; but we are unable to spell out of it any such intention on the part of Congress. Apparently Congress only intended to retain so much of the law permitting the use of consolidated returns as would enable a railroad company to consolidate its income with a subsidiary engaged in the same business. The use of the word "each" suggests the interpretation "each * * * is a corporation whose principal business is that of a common carrier by railroad." It would be an anomaly to say that a bus company, incorporated under the laws of the state as "a common carrier of passengers and freight by motor bus" was a "common carrier by railroad", and we decline to make any such holding. If Congress had intended to include a bus or truck company we think it would have done so in unequivocal language.

Petitioner cites *Scott Brothers, Inc., Collection and Delivery Service*, I. C. C., M. C. 2744, as authority for holding that a bus or truck company may be classified as "a common carrier by railroad." In that proceeding the Interstate Commerce Commission held, under the facts before it, that the applicant, which was organized for the purpose of operating a collection and delivery service for the Pennsylvania and Long Island Railroads in the boroughs of Manhattan, Queens, Brooklyn, Bronx and Jersey City, New Jersey, was subject to part I of the Interstate Commerce Act because the business conducted by it was essentially that of a common carrier by railroad. This conclusion was reached by the majority of the Commission (three of the members dissenting) because the act defined "railroad" as including "all bridges, car floats, lighters, and ferries used by or operated in connection with any railroad" and also "terminal facilities of every kind used or necessary in the transportation of the persons and property designated" therein. Assuming for the purposes of this case that the decision of the majority is correct, it furnishes but slight aid to us in determining the question at issue.

No case has been cited by either party, and we know of none, in which the precise question involved herein has been passed upon by a court or judicial tribunal. However, in *Wells Fargo & Co.* v. *Taylor*, 254 U. S. 175, 187, the Supreme Court, in construing the language of the Employers Liability Act providing that "every common carrier by

---

[6] House Rept. No. 1385, 73d Cong., 2d sess.

railroad" shall be liable in damages for the injury or death of its employees under the circumstances specified in the act, said:

In our opinion the words "common carrier by railroad," as used in the act, mean one who operates a railroad as a means of carrying for the public,—that is to say, a railroad company acting as a common carrier.

Whether a similar construction of the language of section 141 (d) (3) (A), *supra*, should be made need not presently be determined. We are of the opinion, and hold, that the respondent did not err in determining that petitioner's tax liability should be determined on the basis of a separate return of income.

*Judgment will be entered under Rule 50.*