Jersey Central Transportation Company v. Commissioner.
Jersey Cent. Transp. Co. v. Commissioner
Docket No. 110522.
United States Tax Court
1943 Tax Ct. Memo LEXIS 133; 2 T.C.M. (CCH) 711; T.C.M. (RIA) 43404; August 31, 1943
*133 Petitioner, operating motor buses and trucks, held not a common carrier by railroad and therefore not entitled to report its income on a consolidated return under section 141 of the Internal Revenue Code although it was a wholly-owned subsidiary of a common carrier by railroad. Richard J. Lally, Esq., 143 Liberty St., New York City, N. Y., for the petitioner. Paul P. Lipton, Esq., for the respondent. TYSON Memorandum Findings of Fact and Opinion The respondent determined a deficiency in income tax against the petitioner for the calendar year 1939 in the sum of $514.81. The sole question presented is whether the petitioner is entitled to have its income reported on a consolidated return as provided in section 141 of the Internal Revenue Code. Findings of Fact The petitioner is a corporation having its principal office in Jersey City, New Jersey. It was orgainzed on September 14, 1926 under the laws of New Jersey. It filed its income and excess profits tax return for the taxable year with the collector of internal revenue for the fifth district of New Jersey, stating that its kind of business was, "Transportation by Motor". The petitioner's certificate of incorporation provided *134 in part as follows: The objects for which this corporation is formed are: To engage in the transportation of passengers, goods, ware and merchandise by motor and other vehicles, to acquire or establish lines of transportation by motor and other vehicles anywhere in the State of New Jersey or elsewhere and from points in the State of New Jersey or elsewhere to points in other States of the United States, and to establish and receive fares and other charges for such transportation; to build, erect, construct, acquire, purchase, hold, own, maintain, operate, mortgage, pledge, sell, exchange and lease motor vehicles of all kinds and all part thereof, real estate, terminals, garages, warehouses, offices and other buildings or works and to purchase, acquire, hold, sell, assign, transfer, mortgage, pledge and otherwise dispose of the shares of the capital stock, bonds, debentures, or other evidences of indebtedness of any corporation, domestic or foreign. The petitioner filed with the collector of internal revenue a consent to the regulations governing consolidated returns of corporations and authorized The Central Railroad Company of New Jersey (hereinafter referred to as Central), its *135 parent corporation, to make a consolidated return on its behalf for the calendar year 1939. On this form the petitioner again described its kind of business as "Transportation by motor". During the year ending December 31, 1939 Central was a corporation whose principal business was that of a common carrier by railroad. During that year it owned all of the outstanding capital stock of the petitioner. Prior to 1926 Central operated passenger trains on its branch railroad between Lakehurst and Barnegat, New Jersey. Lakehurst was the juncture point between the branch railroad and the main line. Lakewood was located on the main line ten or twelve miles north of Lakehurst. The branch railroad ran east from Lakehurst to Barnegat. Due to declining revenues from the branch Central considered substituting bus service for the passenger train service between Lakehurst and Barnegat. Central was advised by the Public Utility Commission of New Jersey that such train service could not be discontinued unless a substitute service was furnished. It was planned that the bus service to be substituted for the branch railroad would run from Lakewood to Barnegat because the main highway in New Jersey ran *136 between those two towns and not through Lakehurst. No independent bus company would agree to operate a bus service between Lakewood and Barnegat and Central decided to provide such service. Thereupon, the petitioner was organized. On application of Central, the Board of Public Utility Commissioners of New Jersey authorized Central to discontinue the operation of certain trains between Lakehurst and Barnegat, and on application of petitioner, that Board authorized the petitioner to operate two auto buses between Lakewood and Barnegat. The trains were then discontinued by Central and the petitioner began operating a bus service between Lakewood and Barnegat. This bus service was included in the time tables and tariffs of Central and rail tickets issued by Central were honored on the buses operated by the petitioner. After the institution of the bus service between Lakewood and Barnegat, the petitioner expanded its service and during the taxable year operated buses in connection with Central between New York and Philadelphia and New York and Allentown, Pennsylvania. This expanded service constituted the petitioner's principal source of revenue. The rates of the buses on the expanded *137 service were fixed by Central and the schedules of buses were included in Central time tables. The expanded bus service was to protect the rail traffic of Central by obtaining exclusive franchises and foreclosing bus competition where those franchises were obtained; to offer means of transportation to the public additional to those offered by Central; to supplement the petitioner's revenues; and to meet competition of other bus companies. The petitioner also entered the business of transporting freight by truck. Included in this business was a pick up and delivery service from freight terminals. The Railroad Retirement Board by "Decision Letter dated August 23, 1939" ruled that the petitioner was an employer under the Railroad Retirement Act and Railroad Unemployment Insurance Act. This ruling was based partially at least on letters from the petitioner to the Railroad Retirement Board. Central filed a consolidated income tax return for 1939 including the income of petitioner as an affiliated corporation. The petitioner also filed an income tax return for the taxable year on which it stated that its adjusted net income was "Included in Consolidated Income Tax Return with Central *138 RR Co. of New Jersey". The deficiency determined by the respondent against petitioner was based on the ground that it "does not qualify as a common carrier by railroad within the meaning of the law, and, therefore, is not entitled to file a consolidated return with" Central. Opinion TYSON, Judge: The sole issue is whether the petitioner is entitled to report its income on a consolidated return as provided in section 141 of the Internal Revenue Code. [1] At the hearing the respondent conceded that Central was a common carrier by railroad and that a consolidated return for the taxable year had been filed by it. We have found as a fact that Central owned all of the outstanding capital stock of the petitioner. No claim is made under (3) (B) of section 141. Thus the issue is narrowed to the question of whether the petitioner is a corporation "whose principal business is that of a common carrier by railroad." *139 In our opinion this proceeding is governed by Norfolk Southern Bus Corporation, 39 B.T.A. 472; affirmed, 107 Fed. (2d) 304; and Maine Central Transportation Co., 42 B.T.A. 350. In both cases a subsidiary of a common carrier by railroad operated bus and trucking service to supplement and substitute for rail service of its parent. It was held in both instances that the subsidiary company was not a common carrier by railroad within the meaning of section 141 of the 1934 and 1936 Acts which is identical with the statute here involved. Petitioner in seeking to distinguish the Norfolk Southern and Maine Central cases, argues that the purposes of a corporation's organization control the question of whether or not it is a corporation "whose principal business is that of a common carrier by railroad." Upon this premise petitioner says that the Norfolk Southern and Maine Central cases are not controlling because the purposes of the organization of the corporations there involved were to compete with other bus and truck lines while the purpose of the organization of petitioner was *140 to substitute bus and truck service for rail service. The attempted distinction made as to the Maine Central case does not exist, for there the purpose for which the bus line was to be used was "to inaugurate a motor bus and truck service as a supplement to and a substitute for some of its railroad operations," the railroad being the parent of the bus corporation. We think the attempted distinction with regard to the Norfolk Southern case is too tenuous for there, although the organization of the bus line involved was because of a possible loss of passenger business by its parent railroad company to independently organized and operated bus companies, the buses were actually operated in substitution for much of the business of that railroad. What the Circuit Court said in Norfolk Southern Bus Corporation v. Commissioner, supra, is applicable to the contention of the petitioner here that the purpose of its organization controls, i.e., "Whatever the purpose behind petitioner's organization and operation, the fact is inescapable that its principal business is not that of common carrier by railroad but of common carrier by bus or truck. That this business is conducted *141 in close cooperation with the business of the railroad company does not change its essential character." We see no sound basis for a material distinction between the Norfolk Southern and Maine Central cases and the instant case and under the authority of those cases we hold that the petitioner was not entitled to file for the taxable year a consolidated return with Central, because petitioner was not a corporation whose principal business during that year was that of a common carrier by railroad. We consequently approve the determination by respondent of the $514.81 deficiency against petitioner. In view of the suggestion in petitioner's argument that there is, on the point involved, a decisive difference between the substitution of bus and truck service by a subsidiary corporation for its parent corporation's railroad service and the use of such service by the parent corporation to compete with other bus and truck service, it is to be noted that the principal bus business of the petitioner during the taxable year was the operation of its lines between New York and Philadelphia and between New York and Allentown and that this operation was not in substitution for Central's *142 railroad business, but was to protect the traffic of that railroad from bus competition, to supply transportation additional to that afforded by Central, and to meet competition with Central of other bus companies. The petitioner places reliance on a ruling of the Railroad Retirementboard to the effect that the petitioner was an employer under the Railroad Retirement Act and Railroad Unemployment Insurance Act. That ruling has no applicability to this proceeding because it was made under an entirely different act from the one under consideration here and we are, in no event, bound by such ruling. Decision will be entered for the respondent.
Footnotes
1. SEC. 141. CONSOLIDATED RETURNS OF RAILROAD CORPORATIONS. (a) PRIVILEGE TO FILE CONSOLIDATED RETURNS - An affiliated group of corporations shall, subject to the provisions of this section, have the privilege of making a consolidated return for the taxable year in lieu of separate returns. * * * * *
(d) DEFINITION OF "AFFILIATED GROUP". - As used in this section an "affiliated group" means one or more chains of corporations connected through stock ownership with a common parent corporation if - (1) At least 95 per centum of the stock of each of the corporations (except the common parent corporation) is owned directly by one or more of the other corporations; and (2) The common parent corporation owns directly at least 95 per centum of the stock of at least one of the other corporations; and (3) Each of the corporations is either (A) a corporation whose principal business is that of a common carrier by railroad or (B) a corporation the assets of which consist principally of stock in such corporations and which does not itself operate a business other than that of a common carrier by railroad. For the purpose of determining whether the principal business of a corporation is that of a common carrier by raiload, if a common carrier by raiload has leased its railroad properties and such properties are operated as such by other common carrier by railroad, the business of receiving rents for such railroad properties shall be considered as the business of a common carrier by railroad. * * *↩