## SHALLUS v. UNITED STATES.

(Circuit Court of Appeals, Fourth Circuit. May 12, 1908.)

No 771 (1,686).

1. CUSTOMS DUTIES — CLASSIFICATION — "TIN PLATES" — "SHEETS * * * COMMERCIALLY KNOWN AS TIN PLATES."

The term "sheets * * * commercially known as tin plates," in Tariff Act July 24, 1897, c. 11, § 1, Schedule C, par. 134, 30 Stat. 160 (U. S. Comp St. 1901, p. 1638), means rectangular sheets, and does not include small disks.

2. SAME—TIN DISKS—MANUFACTURES OF METAL—"WASTE"—"WHOLLY OR PARTLY MANUFACTURED FROM TIN PLATE"—"ARTICLES OF METAL, WHETHER PARTLY OR WHOLLY MANUFACTURED."

Small disks produced in the manufacture of tin cans, being a by-product in the process of cutting an aperture for filling, and being of much less value than the tin from which they were cut, are not articles "wholly or partly manufactured from tin plate," under Tariff Act July 24, 1897, c.

11, § 1, Schedule C, par. 140, 30 Stat. 162 (U. S. Comp. St. 1901, p. 1639), nor "waste" under Schedule N, par. 463, 30 Stat. 194 (U. S. Comp. St. 1901, p. 1679), but are dutiable as articles of metal, "whether partly or wholly manufactured," under Schedule C, par. 193, 30 Stat. 167 (U. S. Comp. St. 1901, p. 1645).

**3.** SAME—"MANUFACTURED" TIN PLATE—DECREASE IN VALUE—"MANUFACTURED FROM TIN PLATE."

Disks cut as a by-product from tin plate, which are reduced by the process to only about one-fifth of the value of the plate from which they were made, are not "manufactured from tin plate," within the meaning of Tariff Act July 24, 1897, c. 11, § 1, Schedule C, par. 193, 30 Stat. 167 (U. S. Comp. St. 1901, p. 1645). "Manufacture" implies addition to, and not subtraction from, and an article cannot be said to have been manufactured which results from a process that reduces its value.

[Ed. Note.—For other definitions, see Words and Phrases, vol. 5, pp. 4344-4346; vol. 8, p. 7716.]

**4.** SAME—STATUTES—LEGISLATIVE INTENT—PROHIBITIVE DUTIES.

A construction of the tariff law which produces unjust and unconscionable duties should be avoided, if possible. It is-to be assumed that Congress did not intend to make duties prohibitive. Its purpose in enacting the tariff act of 1897 was to protect and not to prohibit, to raise, and not cut off revenue, to promote and not to destroy, legitimate competition, and such construction should be adopted as will give effect to that purpose.

**5.** STATUTES—CONGRESSIONAL RECORDS AND DEBATES.

Congressional records and debates may be consulted in ascertaining legislative intent.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 44, Statutes, §§ 291-294.]

Appeal from the Circuit Court of the United States for the District of Maryland.

For decision below, see 155 Fed. 213.

Walter Evans Hampton, for importer.

John C. Rose, for the United States.

Before PRITCHARD, Circuit Judge, and McDOWELL and DAYTON, District Judges.

DAYTON, District Judge. This is an appeal of an importer from a decree of the United States Circuit Court for the District of Maryland, affirming a decision of the Board of General Appraisers upholding the decision of the collector of the Port of Baltimore to the effect that certain tin disks or tin circles, imported by appellant, were liable to a specific duty of 1½ cents per pound.

The paragraphs of the Dingley Tariff Act (Act July 24, 1897, c. 11, § 1, Schedules C and N, 30 Stat. 160, 162, 167, and 194 [U. S. Comp. St. 1901, pp. 1638, 1639, 1645, and 1679]) controlling the case, that may be in any way involved, are:

"Par. 134. Sheets or plates of iron or steel, or taggers iron or steel, coated with tin or lead, or with a mixture of which these metals, or either of them, is a component part, by the dipping or any other process, and commercially known as tin plates, terne plates, and taggers tin, one and one-half cents per pound."

"Par. 140. No article not specially provided for in this act, which is wholly or partly manufactured from tin plate * * * or of which such tin plate * * * shall be the material or chief value, shall pay a lower rate of duty than that imposed on the tin plate. * * * from which it is made or of which it shall be the component thereof, of chief value."

"Par. 193. Articles or wares not specially provided for in this act, com-

posed wholly or in part of iron, steel, lead, copper, nickel, pewter, zinc, gold, silver, platinum, aluminum or other metal, and whether partly or wholly manufactured, forty-five per cent. ad valorem."

"Par. 463. Waste, not specially provided for in this act, ten per centum ad valorem."

The disks or circles in question were imported from Canada and arose there as a by-product in the manufacture of tin cans. They constitute simply the round piece cut out of the top of the can to provide the aperture by means of which the can could be filled.

It is clear from the statement of this fact that these small disks, varying from 1½ to 3 inches in diameter, cannot be held to be sheets of tin, "commercially known as tin plates." The word "commercially," used in the act, is not to be construed as meaningless, and tin plates are commercially known as rectangular sheets of various sizes, such as 10x20, 11x28 inches (T. D. 15,786). Therefore paragraph 134 may be dismissed from consideration as having no bearing in itself upon the controversy except so far as it fixes the rate to be imposed upon articles embraced in paragraph 140. It seems clear from the evidence that the value of these disks or circles in Canada at the time of importation was from three-fourths of one cent to one cent per pound, while the value in England of commercial tin plates at the time was about two and three-fourths cents per pound. If therefore these disks are charged with the 1¼ cents per pound duty required to be assessed against commercial plates, they must pay near 200 per cent. ad valorem, while the commercial plates would pay about 50 per cent. ad valorem. The proposition that a part of the whole, containing the exact substance and only changed in form and size by which its value is so greatly depreciated, should be so discriminated against is so manifestly unjust and unconscionable as to be avoided if possible. Such discrimination makes, as shown by the evidence, the importation of these disks prohibitive. Did Congress design this? We think not, and this part of the question might well be determined by the universally conceded principle that in the construction of statutes the legislative intent and will are to be ascertained and carried out. As said by Mr. Justice Harlan, in Oates v. First National Bank of Montgomery, 100 U. S. 239, 25 L. Ed. 580:

"The duty of the court, being satisfied of the intention of the Legislature, clearly expressed in a constitutional enactment, is to give effect to that intention, and not to defeat it by adhering too rigidly to the mere letter of the statute, or to technical rules of construction (Wilkinson v. Leland, 2 Pet. 627, 7 L. Ed. 542; Sedgwick, Const. & Stat. Const. 196), and we should discard any construction that would lead to absurd consequences (U. S. v. Kirby, 7 Wall. 482, 19 L. Ed. 278). We ought, rather, adopting the language of Lord Hale, to be 'curious and subtle to invent reasons and means' to carry out the clear intent of the lawmaking power when thus expressed. * * * 'A thing which is within the intention of the makers of a statute is as much within the statute as if it were within the letter, and a thing which is within the letter of the statute is not within the statute unless it be within the meaning of the makers.' Suckley v. Furse, 15 Johns. (N. Y.) 338; People v. Ins. Co., 15 Johns. (N. Y.) 358, 380, 8 Am. Dec. 243."

And as said by Mr. Justice Brewer, in Wabash R. Co. v. Pearce, 192 U. S. 179, 24 Sup. Ct. 231, 48 L. Ed. 397:

"In order to fully understand the force and scope of any statute, we must have regard to the conditions and circumstances for which the legislation

was intended and under which it is to become operative. We are not narrowly to read the letter and ignore the state of affairs to which that legislation was intended and is applicable."

But, again, it is well settled that, these duties being in derogation of common-law right, the statutes imposing them must be construed most favorable to the importer having them to pay. American Net & Twine Co. v. Worthington, 141 U. S. 468, 12 Sup. Ct. 55, 35 L. Ed. 821.

These duties are "never imposed upon the citizen upon vague or doubtful interpretations," and, if the question is one of doubt, it will be resolved in favor of the importer. Hartranft v. Wiegmann, 121 U. S. 609, 7 Sup. Ct. 1240, 30 L. Ed. 1012.

In accordance with these principles, the Circuit Court of Appeals for the First Circuit, in U. S. v. Proctor, 76 C. C. A. 96, 145 Fed. 126, has held extract of nutgalls from which tannic acid may be produced not entitled to be assessed with the duty imposed upon tannic acid because, among other reasons, such duty would impose a 400 per cent. ad valorem duty, prohibitive in character, and not within the intention of Congress.

In the case before us we can see no reason for reaching a different conclusion. The purpose of Congress (and to ascertain it we are entitled to consider its records and debates upon the subject), it is manifest, was to protect, and not prohibit; to raise revenue, and not cut off revenue; to promote legitimate business, and not destroy it.

We cannot regard these disks as being "wholly or partly manufactured from tin plate" under fair construction of these terms. Only the narrowest and most technical construction can hold them to be so. It is against common sense and common experience to say that an article is "manufactured" wholly or in part by a process that reduces fivefold its value in its original state. The act of manufacturing implies addition and not subtraction from its value. These disks are simply and solely the resulting incident of the manufacture of the tin sheet into the tin can. It is true they can be saved and utilized for minor purposes, and their value exceeds that of the ordinary clippings and cuttings well defined as waste; but for most of the uses for which they can be applied it is, we think, immaterial whether they have the coating of tin or be dipped in tin or not. For instance, if the original sheet plate before being dipped in tin were to be made into the cans, and these cans alone should then be subject to the coat of tin, these disks would remain simply "articles of wares * * * composed wholly or in part of iron, steel, lead or other metal," as set forth in the "basket" clause or paragraph 193. For practical purposes, in most instances, such untinned disks would be as effective for the purposes now used as they would be if coated with tin. Such would be the case at least with the roofing cap, which the evidence shows is the principal use to which they are devoted. Under the circumstances, the coating of tin upon them may well be regarded as immaterial. On the other hand, while it might not be proper to class them as waste, for in their shape they command a higher price than the waste cuttings for the reason that they are partly prepared for roofing caps and other like articles, they can very rightly be assessed under paragraph 193,

the "basket" one especially provided to reach just such articles and under which they will be taxed fairly and equitably with the tin and other metal importations, and we therefore hold that they should be so assessed.

The decree of the court below must be reversed, and the cause remanded, with instructions to enter decree in accordance with the views herein set forth.