## In re R. HAL COMPTON CRUDE OIL PURCHASING CO.

### No. 8089.

District Court, E. D. Illinois.

June 11, 1941.

Harold G. Baker and Baker, Lesemann, Kagy & Wagner, all of East St. Louis, Ill., for Foster, trustee.

Hal W. Stewart, of Findlay, Ohio, for Illinois Pipe Line Co.

LINDLEY, District Judge.

The facts are stipulated. However, it does not appear from the stipulation that there was any contract between the parties other than a general understanding that debtor would deliver oil to claimant and that the latter would transport the same in its pipe line to the refinery and there deliver it to debtor. Indeed, the stipulation is that "pursuant" to Interstate Commerce Commission Tariff No. 161, debtor delivered to claimant at various dates in November and December of 1940 and January, 1941, separate quantities of oil, some thirty-three in number, varying from 821 barrels to 20,000 barrels each, the total being 118,587.50 barrels of which 109,242.63 barrels have been delivered to debtor, there remaining in the hands of claimant 9,344.87 barrels.

I take it that the intent of the stipulation is that the facts are as if debtor had said to claimant "I will deliver oil to you to be transported and redelivered to me for the charge mentioned and under the terms fixed by the tariff," and as if claimant had replied: "I agree to take the oil, transport it and deliver it to you for the charge mentioned in and according to the terms and conditions of the tariff." Following this agreement, oil was from time to time received by claimant from debtor, transported by claimant and delivered to debtor as above stated. There were no bills of lading.

To my mind the stipulation discloses a continuing contract for delivery of oil in accord with the terms of the tariff. It was not contemplated and apparently could not have been contemplated by the parties that if debtor failed to pay the transportation charges, claimant, in order to retain its lien for transportation, would have to store 118,000 barrels of oil. Accordingly, I think the case is governed by Knapp, Stout & Co. v. McCaffrey, 178 Ill. 107, 52 N.E. 898, 900, 69 Am.St.Rep. 290 and Id., 177 U.S. 638, 20 S.Ct. 824, 827, 44 L.Ed. 921. The Illinois Supreme Court said: " * * This lien

'extends to all the goods delivered under one contract, although they be delivered in different parcels and at different times; and the bailee may detain any portion of them as a lien upon the whole,' even if he has delivered a part. 3 Am. & Eng. Enc. Law (2d Ed.) 760; Morgan v. Congdon, 4 N.Y. 552; Schmidt v. Blood, 9 Wend. [N.Y.] 268, [24 Am.Dec. 143]; McFarland v. Wheeler, 26 Wend. [N.Y.] 467; Potts v. Railroad Co., 131 Mass. 455 [41 Am.Rep. 247]; Blake v. Nicholson, 3 Maule & S. 167; Chase v. Westmore, 5 Maule & S. 180. Up to the time the whole raft reached Boston Bay, McCaffrey had a lien on each piece and parcel of lumber thereon for the carriage of the entire raft. The Schulenburg Company could not change or defeat that lien by directing him to divide the raft and bring half to St. Louis first. That direction was solely for its benefit. McCaffrey was ready and willing, and offered, to tow the half raft to St. Louis; but was refused permission, and his right to do so was denied, by the purchaser. This excused, and, indeed, prevented, his further performance. Therefore McCaffrey had a common-law bailee's lien on said half raft, while in his possession at Boston Bay, for the towing of the entire raft at the contract price. His claim is for $3,795.82. This sum we consider established by the proofs, * * * for which, in our opinion, complainant had a bailee's lien on said half raft while he retained possession, and which would bear interest at five per cent. per annum from the date when the Knapp Company forbade McCaffrey to tow said half raft to St. Louis under his contract, which was November 12 or 13, 1894."

And the Supreme Court of the United States said: "In the case under consideration the remedy chosen by the plaintiff was the detention of the raft for his towage charges. That a carrier has a lien for his charges upon the thing carried, and may retain possession of such thing until such charges are paid, is too clear for argument. We know of no reason why this principle is not applicable to property towed as well as to property carried. While the duties of a tug to its tow are not the duties of a common carrier, it would seem that his remedy for his charges is the same, pro-vided that the property towed be of a nature admitting of the retention of possession by the owner of the tug. But whatever might be our own opinion upon the subject, the supreme court of Illinois, having held that under the laws of that state the plaintiff had a possessory lien upon this raft, that such lien extended to so much of the raft as was retained in his possession, for the entire bill, and that under the facts of this case plaintiff did have possession of the half raft until he surrendered it under order of the court for its release upon bond given, we should defer to the opinion of that court in these particulars as they are local questions dependent upon the law of the particular state."

See, also, Barry & Sons v. Stone, 1 Cir., 5 F.2d 769; Sheppard v. New York, N.H. & H.R. Co., 227 Mass. 234, 116 N.E. 556, 557; Wabash Railroad Co. v. William N. Pearce, 192 U.S. 179, 24 S.Ct. 231, 48 L.Ed. 397.

■ Accordingly I find that the shipments constituted parts and parcels of one continuing transaction; that claimant is entitled to a lien for all unpaid charges for transportation of any oil received and transported by it to the full extent of oil now retained by it; that there is now due claimant for transportation of the oil $9,959.27; that claimant is entitled to a lien securing same upon 9,344.87 barrels of oil now retained by it and that the estate of the debtor has no title in and to last-mentioned oil except upon discharge of the lien. I conclude that, considering the nature of transportation of oil, the continuing character of the contract and the provisions of Rule 6 of the tariff reading as follows: "Payment of transportation and other charges. The shipper or consignee shall pay the transportation and all other lawful charges accruing on crude petroleum tendered for shipment, and if required shall pay the same before delivery. Crude petroleum accepted for transportation shall be subject to a lien for all such charges," this lien must be recognized by the court. An order will enter allowing the claim and validating the lien of claimant as asserted. Proper formal order may be submitted.