**QUAKER CITY MOTOR PARTS CO.**
v.
**INTER-STATE MOTOR FREIGHT SYSTEM.**

**QUAKER CITY MOTOR PARTS CO.**
v.
**The ADLEY EXPRESS COMPANY.**
Civ. A. Nos. 21825, 21826.

United States District Court
E. D. Pennsylvania.
Jan. 21, 1957.

Ronald Souser, of Souser, Schumacker, Kleeb & Lunkenheimer, Philadelphia, Pa., for plaintiff.

Paul F. Barnes, Philadelphia, Pa., for defendant Inter-State.

Howard M. Kuehner, Philadelphia, Pa., for defendant Adley.

Michael von Moschzisker, Philadelphia, Pa., for intervenors Nye and Perkins.

VAN DUSEN, District Judge.

Plaintiff, a wholesale processor, storer and seller of automobile parts moving to it in interstate commerce, secured a mandatory injunction on December 21, 1956, requiring the two defendant common carriers of goods in interstate commerce to deliver goods consigned to it. The injunction was issued after hearings held on December 19 and December 21, 1956, at which testimony was presented showing, inter alia, that no deliveries had been made to plaintiff since November 27, 1956, in spite of reasonable requests therefor, that plaintiff was losing its customers through inability to supply them, that lack of business had required it to discharge over one-third of its non-supervisory employees, that plaintiff's

business would be ruined unless it received deliveries and these defendants have been, since November 27, 1956, making deliveries of like traffic to other consignees at the request of other shippers, as well as pick-ups from other shippers of like traffic. According to defendants' drivers,[1] their failure to deliver was due to the personal principles of such drivers, who were unwilling to cross an organizational picket line (around plaintiff's premises) maintained by persons who are neither employees of plaintiff or of defendants nor members of any unions representing any of such employees but who are acting for two unions who have disclaimed representation of plaintiff's employees and refused to agree to an N. L. R. B.-conducted election of such employees, requested by plaintiff. . .

■ There is no need to set out the evidence in detail in view of the findings of fact, filed December 21, 1956, and supplemented earlier today on the basis of the testimony produced by the intervenors on January 2 and 3, 1957. None of the counsel for the original defendants, intervening defendants or amicus curiae have challenged the court's Conclusions of Law that common carriers such as these and their employees have an obligation to deliver goods shipped by them in interstate commerce,[2] which is enforcible by a mandatory injunction,[3] and that the Norris-LaGuardia Act, 29

U.S.C.A. § 101ff. does not prevent the issuance of this injunction. This memorandum opinion will be devoted to the question of whether this remedy becomes unavailable because (1) two labor unions, who do not represent or claim to represent any of the employees of either the carriers or the consignees, conduct a peaceful organizational picket line around the premises of plaintiff and (2) the employees of the carriers are unwilling to cross the picket line due to their personal principles.

■ The amicus curiae contends that this court had no jurisdiction to issue the injunctions in view of Garner v. Teamsters Union, 1953, 346 U.S. 485, 74 S.Ct. 161, 98 L.Ed. 228. The Garner decision seems inapplicable to the facts presented by this case for these reasons:

1. The conduct enjoined constitutes violation of expressed Congressional policy enacted in a statute and compliance with the injunction will not interfere with Congressional policy contained in the Labor Management Relations Act.

There is no indication that Congress, by the Labor Management Relations Act and its predecessors, 29 U.S.C.A. § 141ff., intended to overrule, in a situation such as this, its previously expressed intent that persons engaged in the transportation business, which is affected with the public interest, make delivery to their consignees. See 49 U.S.C.A. § 316(b)

1. There was also testimony indicating that a Joint Labor Union Council had issued a directive that the picket line not be crossed to the union of defendants' employees (Local 107). The drivers who testified stated that their refusal to cross the line was a matter of principle and they had received no directive from their union. . . . .

2. In addition to the authorities cited in the Conclusions of Law (particularly 49 U.S.C.A. § 316(b) and the Pacific Gamble Robinson cases cited in Conclusion of Law No. 5), see North Penn. Railroad Co. v. Commercial Bank, 1887, 123 U.S. 727, 733–734, 8 S.Ct. 266, 31 L.Ed. 287; Wabash R. R. Co. v. Pearce, 1904, 192 U.S. 179, 187, 24 S.Ct. 231, 48 L.Ed. 397;

Bruskas v. Railway Express Agency, 10 Cir., 1949, 172 F.2d 915, 918; Montgomery Ward & Co. v. Northern Pacific Terminal Co., D.C.Or.1953, 128 F.Supp. 475; Burgess Bros. Co. v. Stewart, 1920, 112 Misc. 347, 184 N.Y.S. 199, 205–206; and cases cited in those cases. It is not necessary to discuss the failure of Congress to use the words "reasonable request" in 49 U.S.C.A. § 316(b) after using them in 49 U.S.C.A. § 1(4) since I find that the requests to deliver in this case were "reasonable."

3. See cases in footnote 4. Cf. 49 U.S.C.A. § 23. F.R.Civ.P. 81(b), 28 U.S.C.A. has substituted "the remedy of a mandatory injunction for mandamus." . . . .

(cf. 49 U.S.C.A. § 23).[4]  Economic pressure by laborers, which violates another federal law, is not protected by Sections 7 and 8 of the Labor Management Relations Act, 29 U.S.C.A. §§ 157 and 158. See Southern S. S. Co. v. National Labor Relations Board, 1942, 316 U.S. 31, 62 S.Ct. 886, 86 L.Ed. 1246; N. L. R. B. v. Indiana Desk Co., 7 Cir., 1945, 149 F.2d 987; American Rubber Products Corp. v. N. L. R. B., 7 Cir., 1954, 214 F.2d 47; Cox, "The Right to Engage in Concerted Activities," 26 Ind.L.J. 319, 333ff. (1951).  This is not a situation where the carrier's employees, or the con-

signee's employees, are on strike [5] "engaged in concerted activities" within the language of 29 U.S.C.A. § 157,[6] or involved in a "labor dispute" under 29 U.S.C.A. § 101ff.[7]  On the record now before this court, the organizational picketing being carried on by Locals 596 and 724 can be just as effectively carried on, as a means of persuasion, communication and free speech, without crossing plaintiff's driveway at the time these carriers enter and leave plaintiff's premises. The United States Supreme Court has repeatedly recognized that organizational picketing is subject to limits.[8]  Further-

4. The federal courts have repeatedly held that injunctions will issue to enforce this right to delivery of goods shipped by a common carrier. See Pacific Gamble Robinson Co. v. Minneapolis & St. Louis Ry. Co., D.C.Minn.1949, 85 F.Supp. 65; Erie R. Co. v. Local 1286, D C. W.D.N.Y.1953, 117 F.Supp. 157; Louisville & N. R. Co. v. Local Union No. 432, D.C.S.D.Ala.1952, 104 F.Supp. 748.

5. This distinguishes cases such as General Drivers etc., v. American Tobacco Co., 1955, 348 U.S. 978, 75 S.Ct. 569, reversing Ky.1954, 264 S.W.2d 250, relied on by the amicus curiae, since a strike of the consignee's employees was involved making 29 U.S.C.A. § 158(b) directly applicable.  Also, it is noted that in the American Tobacco case, the employees of the consignee (the strikers and pickets) were members of the same union as the drivers of the common carrier. It is recognized that the labor relations of the common carrier defendants are subject to the Labor Management Relations Act.  See Amalgamated Ass'n of Street Elec. R. & M. Coach, etc. Employers v. Wisconsin Employment Relations Board, 1951, 340 U.S. 383, 71 S.Ct. 359, 95 L.Ed. 364.

6. Cf. Cox, "The Right to Engage in Concerted Activities," 26 Ind.L.J. 319, 326 (1951).  In this case, as in the Thompson Products case, N. L. R. B. v. Thompson Products, 6 Cir., 162 F.2d 287, the statute upon which the amicus curiae relies provides that the consignee's employees shall have the right to refrain from collective bargaining or engaging in other concerted activities, 29 U.S.C.A. § 157.

7. In comparable situations involving labor difficulties, which were far nearer "labor

disputes" as defined in the Norris-La-Guardia Act, 29 U.S.C.A. § 113, than the present situation, federal courts have concluded that the Norris-LaGuardia Act did not prohibit the court from entering the injunction.  See Pacific Gamble Robinson Co. v. Minneapolis & St. Louis Ry. Co., D.C.Minn.1949, 85 F.Supp. 65; Minneapolis & St. L. Ry. Co. v. Pacific Gamble Robinson Co., 8 Cir., 1954, 215 F.2d 126; Erie R. Co. v. Local 1286, D.C.W.D.N.Y.1953, 117 F.Supp. 157; Louisville & N. R. Co. v. Local Union No. 432, D.C.S.D.Ala.1952, 104 F.Supp. 748; Montgomery Ward & Co. v. Northern Pacific Terminal Co., D.C.Or.1954, 128 F.Supp. 520.  Cf. New York Central R. Co. v. Brotherhood, N.D.Ohio 1956, 140 F.Supp. 273.  See, also, Conclusions of Law 5 to 9, inclusive.

8. The following language of the United States Supreme Court in Giboney v. Empire Storage & Ice Co., 1949, 336 U.S. 490, 69 S.Ct. 684, 688, 93 L.Ed. 834, seems pertinent since this picketing's effect is to deny the consignee's employees their right to decline to associate with their fellows in violation of 29 U.S.C.A. § 157:
   "It rarely has been suggested that the constitutional freedom for speech and press extends its immunity to speech or writing used as an integral part of conduct in violation of a valid criminal statute.  We reject the contention now. Nothing that was said or decided in any of the cases relied on by appellants calls for a different holding."
   In connection with the use of the word "criminal" in this case, it is noted that the United States Supreme Court said, in Building Service Emp. Intern. Union v. Gazzam, 1950, 339 U.S. 532, 540, 70 S.Ct. 784, 789, 94 L.Ed. 1045:

more, the primary effect of such picketing under the circumstances appearing in this record is to deny plaintiff's employees the right to refrain from collective bargaining granted by Congress in the Labor Management Relations Act, 29 U.S.C.A. § 157, and in the Norris-LaGuardia Act, 29 U.S.C.A. § 102.[9]

"It is not the presence of criminal sanctions which makes a state policy 'important public law.' Much public policy does not readily lend itself to accompanying criminal sanctions. Whether to impose criminal sanctions in connection with a given policy is itself a question of policy."

The court went on to say in the Giboney case 336 U.S. at pages 500, 501, 502 and 503, 69 S.Ct. at page 690:

"Appellants also rely on Carpenters [and Joiners] Union v. Ritter's Cafe, 315 U.S. 722, 62 S.Ct. 807, 86 L.Ed. 1143, and Bakery Drivers and [Helpers] Local v. Wohl, 315 U.S. 769, 62 S.Ct. 816, 86 L. Ed. 1178, decided the same day. Neither lends support to the contention that peaceful picketing is beyond legislative control.

\*   \*   \*   \*   \*

"No opinions relied on by petitioners assert a constitutional right in picketers to take advantage of speech or press to violate valid laws designed to protect important interests of society.

\*   \*   \*   \*   \*

"It is true that the agreements and course of conduct here were as in most instances brought about through speaking or writing. But it has never been deemed an abridgment of freedom of speech or press to make a course of conduct illegal merely because the conduct was in part initiated, evidenced, or carried out by means of language, either spoken, written, or printed. See e. g., Fox v. Washington, 236 U.S. 273, 277, 35 S.Ct. 383, 384, 59 L.Ed. 573; Chaplinsky v. New Hampshire, 315 U.S. 568, 62 S.Ct. 766, 86 L.Ed. 1031. Such an expansive interpretation of the constitutional guaranties of speech and press would make it practically impossible ever to enforce laws against agreements in restraint of trade as well as many other agreements and conspiracies deemed injurious to society.

\*   \*   \*   \*   \*

"There was clear danger, imminent and immediate, that unless restrained appellants would succeed in making that policy a dead letter insofar as purchases by non-union men were concerned. Appellants' power with that of their allies was irresistible. And it is clear that appellants were doing more than exercising a right of free speech or press. Bakery Drivers [and Helpers] Local v. Wohl, 315 U.S. 769, 776–777, 62 S.Ct. 816, 819, 820. They were exercising their economic power together with that of their allies to compel Empire to abide by union rather than by state regulation of trade." In Bakery Drivers and Helpers Local v. Wohl, 1942, 315 U.S. 769, 776–777, 62 S. Ct. 816, 819, the court said:

"Picketing by an organized group is more than free speech, since it involves patrol of a particular locality and since the very presence of a picket line may induce action of one kind or another, quite irrespective of the nature of the ideas which are being disseminated. Hence those aspects of picketing make it the subject of restrictive regulation."

The hearing judge recognizes that in almost all cases, peaceful, organizational picketing will involve a loss of business to an employer with a resultant loss of jobs or earnings to his employees. However, where the course of conduct followed by the picketing unions discloses that their major purpose is to force the employees to join their union through the closing down of the employer's business, then the picketing may be limited to comply with the policy contained in the above cited Acts of Congress. See Building Service Emp. Intern. Union v. Gazzam, 1950, 339 U.S. 532, 540–541, 70 S.Ct. 784.

As the hearing judge pointed out during the hearings, the basic purposes of organizational picketing (communication and persuasion) could be accomplished by picketing which did not cross the driveway when common carriers approached. Substituting the word "Congress" for the word "California," the United States Supreme Court has used this language in Hughes v. Superior Court, 1950, 339 U.S. 460, at page 466, 70 S.Ct. 718, at page 722, 94 L.Ed. 985:

"We cannot construe the Due Process Clause as precluding [Congress] from securing respect for its policy \* \* \* by prohibiting systematic picketing that would subvert such policy."

See, also, International Brotherhood of Teamsters etc. Union v. Hanke, 1950, 339 U.S. 470, 474–475, 478 (including footnote 5), 70 S.Ct. 773, 94 L.Ed. 995; Local 618, Automotive Employees Union, 116 N.L.R.B. No. 271 (25 L.W. 2289).

9. See Finding of Fact 12. Picketing which restrains or coerces other employees in the exercise of their rights is not a pro-

2. The Labor Management Relations Act provides no *adequate remedy under the facts of this case.*

The National Labor Relations Board has indicated by a number of decisions that Congress has not given it any jurisdiction to act under 29 U.S.C.A. § 158(b) in the situation presented by this record,[10] even though there is involved a violation of the Congressional intent stated in 29 U.S.C.A. § 157 that "employees * * * shall also have the right to refrain from any and all such activities [to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection] * * *."[11] The United States Court of Appeals for the Third Circuit has reserved judgment on the extent of proper Board action under 29 U.S.C.A. § 158(b) (1) (A), saying, in N. L. R. B. v. Jarka Corp. of Philadelphia, 3 Cir., 1952, 198 F.2d 618,[12] at pages 621–622:

"It seems better that judgment of the reach of Section 8(b) (1) (A) should be reserved for a case where power to restrain the conduct complained of depends upon such broad interpretation of that Section as is now urged."

3. Under the circumstances outlined in paragraphs 1 and 2 above, the federal appellate courts have stated that proceedings before the National Labor Relations Board are not the exclusive remedy where irreparable injury will result from the failure to grant judicial relief.[13]

The United States Supreme Court, in United Construction Workers v. Laburnum Const. Corp., 1954, 347 U.S. 656, 74 S.Ct. 833, 98 L.Ed. 1025, has rejected the contention that the Labor Management Relations Act "has occupied the labor relations field so completely that no regulatory agency other than the National Labor Relations Board and no court may assert jurisdiction over unfair labor practices defined by it, unless expressly authorized by Congress to do so." 347

---

tected activity. Cf. N. L. R. B. v. Thayer Co., 1 Cir., 1954, 213 F.2d 748, 755–756, and authorities there cited.

10. The amicus curiae contends that the Board has jurisdiction over this situation under 29 U.S.C.A. § 158(b) (1) (A).

11. See Report of Trial Examiner Linder, filed about 11/20/56, in Local 639, International Brotherhood of Teamsters, etc., and Curtis Brothers, Inc., Case No. 5–CB–190 (Post 5–CC–59), and the authorities cited in that report, including National Maritime Union of America, 78 N.L.R.B. 971, 22 L.R.R.M. 1289; Perry Norvell Company Case, 80 N.L.R.B. 225, 23 L.R.R.M. 1061; Painters' District Council No. 6 (the Higbee Company), 97 N.L.R.B. 654, 29 L.R.R.M. 1151. But cf. Report of Trial Examiner Myers filed 11/6/56 in Local No. 12 and Shepherd Machinery Company, Case No. 21–CB–805 and Local No. 12 and Mrs. Edwin Selvin, Case No. 21–CC–229. Both of these reports by Trial Examiners are now on appeal to the Board and it is clear that plaintiff could not get any decision until the Board has acted in one of these cases, and such action is not expected soon. A case similar to the above-mentioned cases,

in which reports were filed last November, is pending before another Trial Examiner (Hunt), apparently awaiting Board decision on one or the other of these appeals. The hearing judge has notified, on 1/4/57, the office of the General Counsel for the National Labor Relations Board of these proceedings and of the related Civil Actions of Quaker City Motor Parts Co. v. Highway Lines, C. A. No. 21882, and Quaker City Motor Parts Co. v. Davidson Transfer & Storage Co., C. A. No. 21883, but no representative of the Board has appeared at any of the hearings in any of these cases (N. T. 305). See Note 64 Harv.L.Rev., 781, 795–8 (1951).

12. Cf. N. L. R. B. v. Phila. Iron Works, 3 Cir., 1954, 211 F.2d 937; N. L. R. B. v. Local 369, 3 Cir., 240 F.2d 539.

13. The hearing judge recognizes that the cases cited under this heading contain only dictum, but neither the court nor the above counsel in this case have discovered any appellate authorities in point. The lower federal courts have granted relief in comparable cases (see cases in footnote 4).

U.S. at page 663, 74 S.Ct. at page 837.[14] In that case, the court went on to say in 347 U.S. at page 665, 74 S.Ct. at page 838:

"To the extent, however, that Congress has not prescribed procedure for dealing with the consequences of tortious conduct already committed, there is no ground for concluding that existing criminal penalties or liabilities for tortious conduct have been eliminated."

At pages 666–667 of 347 U.S., at page 839 of 74 S.Ct. the court emphasized that the creation of a "new preventive procedure against unfair labor practices" did not negative other means of preventing such conduct (even assuming that the conduct involved here falls within the terms of 29 U.S.C.A. § 158) by referring to this language of 29 U.S.C.A. § 160(a):

"'Sec. 10. (a) The Board is empowered, as hereinafter provided, to prevent any person from engaging in any unfair labor practice (listed in section 8) affecting commerce. This power shall not be affected by any other means of adjustment or prevention that has been or may be established by agreement, law, or otherwise: * * *.' 61 Stat. 146, 29 U.S.C. (1952 ed.) § 160(a), 29 U.S.C.A. § 160(a).[9]"

"[9]. '* * * By retaining the language which provides the Board's powers under section 10 shall not be affected by other means of adjustment, the conference agreement makes clear that, when two remedies exist, one before the Board and one before the courts, the remedy before the Board shall be in addition to, and not in lieu of, other remedies.' Conference Report on H.R. 3020, H.R.Rep. No. 510, 80th Cong., 1st Sess. 52."

Finally, the opinion indicated in 347 U.S. at page 669, 74 S.Ct. at page 840, that existing judicial remedies should not be superseded "where the federal preventive administrative procedures are impotent or inadequate."[15]

Similarly, in Steele v. Louisville & N. R. R. Co., 1944, 323 U.S. 192, 65 S.Ct. 226, 89 L.Ed. 173, the United States Supreme Court has held that in the event of the unavailability of an adequate administrative remedy for the settlement of a labor difficulty, a federal right, such as that contained in 29 U.S.C.A. § 157 (cf. 29 U.S.C.A. § 102), should be enforced by "resort to the usual judicial remedies of injunction and award of damages when appropriate for breach of that duty." 323 U.S. at page 207, 65 S.Ct. at page 234. In that case, the court said in 323 U.S. at pages 205–206 and 207, 65 S.Ct. at page 233:

"Whether or not judicial power might be exerted to require the Adjustment Board to consider individual grievances, as to which we express no opinion, we cannot say that there is an administrative remedy available to petitioner or that resort to such proceedings in order to se-

---

14. In Allen Bradley-Local v. Wiscons'n Employment Relations Board, 1942, 315 U.S. 740, at pages 747, 748, 62 S.Ct. 820, 86 L.Ed. 1154, the court upheld a state labor board's order to desist from mass picketing where the N. L. R. B. had not undertaken to exercise the jurisdiction conferred upon it using this language in 315 U.S. at page 750, 62 S.Ct. at page 826:

"And we fail to see how the inability to utilize mass picketing, threats, violence, and the other devices which were here employed impairs, dilutes, qualifies or in any respect subtracts from any of the rights guaranteed and protected by the federal Act."

15. For the reasons pointed out in footnote 11 above, the "federal preventative administrative procedures" are "inadequate and impotent" in this case. Counsel for plaintiff has turned over to representatives of the N. L. R. B. the notes of testimony taken in this case on December 19 and 21 and been advised that prompt consideration of this labor difficulty by any representatives of the N. L. R. B. is most unlikely (N. T. 320–4).

cure a possible administrative remedy, which is withheld or denied, is prerequisite to relief in equity.

\* \* \* \* \* \*

"In the absence of any available administrative remedy, the right here asserted, to a remedy for breach of the statutory duty of the bargaining representative to represent and act for the members of a craft, is of judicial cognizance. That right would be sacrificed or obliterated if it were without the remedy which courts can give for breach of such a duty or obligation and which it is their duty to give in cases in which they have jurisdiction."

Also, in Amazon Cotton Mill Co. v. Textile Workers Union, 4 Cir., 1948, 167 F.2d 183, relied on by the amicus curiae, the court recognized that federal courts might act in some situations involving labor difficulties,[16] even though rights created by the Labor Management Relations Act are involved.

The strength of the federal policy requiring persons working for businesses affected with a public interest to make deliveries as required by Congressional statute [49 U.S.C.A. § 316(b)] has been consistently recognized by the United States Supreme Court. See Wilson v. New, 1917, 243 U.S. 332, 349 and 353, 37 S.Ct. 298, 61 L.Ed. 755.[17]

Counsel for the intervening defendants contends[18] that the wording of the injunction requires involuntary servitude by the intervening defendants (as "employees" of the defendants), contrary to the Thirteenth Amendment. However, a long series of cases have held that creating the ordinary legal motives for right conduct on the part of a class such as the employees of these defendants, as opposed to an individual, does not involve "involuntary servitude" as those words are used in that Amendment. See International Union, Auto Workers etc. v. Wisconsin Employment Relations Board, 1949, 336 U.S. 245, 251, 69 S.Ct. 516, 93 L.Ed. 651;[19] Le

16. The court said, 167 F.2d at page 190: "We do not mean to say that unusual cases may not arise where courts of equity could be called upon to protect the rights of parties created by the act. [Citing cases.] What we have here, however, is not an unusual case calling for the exercise of extraordinary jurisdiction, but an ordinary unfair labor practice case involving alleged refusal to bargain." Cf. A. F. of L. v. N. L. R. B., 1940, 308 U.S. 401, 412, 60 S.Ct. 300, 84 L.Ed. 347.

17. In this case, the court said 308 U.S. at pages 349–350 and 353, 37 S.Ct. at pages 302 and 304: "Clear also is it that an obligation rests upon a carrier to carry on its business, and that conditions of cost or other obstacles afford no excuse and exempt from no responsibility which arises from a failure to do so, and also that government possesses the full regulatory power to compel performance of such duty.

\* \* \* \* \*

"In other words, considering comprehensively the situation of the employer and the employee in the light of the obligations arising from the public interest and of the work in which they are engaged, and the degree of regulation which may be lawfully exerted by Congress as to that business, it must follow that the exercise of the lawful governmental right is controlling."

18. This contention is made whether or not there was a picket line there (N. T. 373). See, also, Memorandum filed by intervening defendants on 1/3/57. Bailey v. Alabama, 1911, 219 U.S. 219, 31 S.Ct. 145, 55 L.Ed. 191, relied on by the intervenors, is quite different since it involved compulsory service by an individual for repayment of a debt (peonage).

19. In this case, the court said 336 U.S. at page 251, 69 S.Ct. at page 520: "The Union contends that the statute as thus applied violates the Thirteenth Amendment in that it imposes a form of compulsory service or involuntary servitude. However, nothing in the statute or the order makes it a crime to abandon work individually, compare Pollock v. Williams, 322 U.S. 4, 64 S.Ct. 792, 88 L.Ed. 1095, or collectively. Nor does either undertake to prohibit or restrict any employee from leaving the service of the employer, either for rea-

Baron v. Printing Specialties, S.D.Cal. 1948, 75 F.Supp. 678, 681–682, affirmed 9 Cir., 1949, 171 F.2d 331, certiorari dismissed 1949, 336 U.S. 949, 69 S.Ct. 884, 93 L.Ed. 1105; France Packing Co. v. Dailey, 3 Cir., 1948, 166 F.2d 751, 753–754; [20] State v. Traffic Telephone Workers' Federation, 1949, 2 N.J. 335, 66 A. 2d 616, 624, 9 A.L.R.2d 854; Burgess Bros. Co. v. Stewart, 1921, 114 Misc. 673, 187 N.Y.S. 873, 876; cf. Robertson v. Baldwin, 1897, 165 U.S. 275, 17 S.Ct. 326, 41 L.Ed. 715; Marcus Brown Holding Co. v. Feldman, 1921, 256 U.S. 170, 199, 41 S.Ct. 465, 65 L.Ed. 877; Woods v. Fliss, 7 Cir., 1948, 168 F.2d 612, 614; Taylor v. Bowles, 9 Cir., 1945, 147 F.2d 824, 835; and cases cited in those cases. Furthermore, this injunction does not require any labor or service by an "individual employee" under the terms of 29 U.S.C.A. § 143, but is directed to the common carrier defendants and such persons as choose to work as employees in such businesses, affected with a public interest. The fact that Congress included the word "individual" before the word "employee" in this statute seems significant.[21]

For the reasons stated above, the motions to dissolve the temporary injunctions will be dismissed.

### Order

And now, January 21, 1957, it is ordered that the motions to dissolve the temporary injunctions entered in the above cases are dismissed.

son or without reason, either with or without notice. The facts afford no foundation for the contention that any action of the State has the purpose or effect of imposing any form of involuntary servitude."

20. In this case, the court pointed out 166 F.2d at page 754:
"There is no involvement here with the distinct—and unquestioned—right of the worker to quit his job or the right of the employer to discharge him for cause. In this situation we fail to see any true constitutional question in this case."

21. As pointed out above, this is not a case where an employee is being ordered to work for his employer, at any time, and further, it is not a case where he is being given the option to terminate his employment during a labor difficulty between such employer and the employees of such employer. The employee is only being ordered to carry out the obligations which the law imposed on his employer when he undertook his employment as long as he chooses to work for that employer.