**SOUTHEASTERN MOTOR LINES, Inc., v. HOOVER TRUCK CO., Inc., et al.**

No. 120.

District Court, M. D. Tennessee, Nashville Division.

Aug. 12, 1940.

McConnico, Armistead, Waller & Davis, of Nashville, Tenn., for plaintiff Southeastern Motor Lines, Inc.

Cate & Cate, Claude Calliott, Carver M. Lackey, and W. Gordon McKelvey, all of Nashville, Tenn., for defendants Hoover Truck Co., Inc., and others.

DAVIES, District Judge.

After hearing the affidavits filed in this cause, and the testimony of witnesses in open court, the court finds the following facts:

1. That for some time prior to July 11, 1940, Local Union No. 327, of the International Brotherhood of Teamsters, Chauffeurs, Stablemen and Helpers, had been engaged in an effort to organize the employees of all motor freight companies operating out and in the City of Nashville, Tennessee, to bring them into the Union and to obtain closed shop contracts, such as were filed as exhibits to the answer of the intervening defendants, with all the motor freight companies so operating in and out of the City of Nashville.

That as part of its program, said Local Union No. 327 determined to organize the employees of plaintiff's company and to require plaintiff company to sign closed shop contracts.

2. That the executive committee of Local Union No. 327 of the International Brotherhood of Teamsters, etc., placed pickets on the early morning of July 11, 1940, in front of the office and place of business of plaintiff in Nashville, Ten-

nessee, without prior warning to plaintiff and without having communicated with plaintiff, since the latter part of January, 1940, directly, or indirectly, or having made reasonable effort to communicate as to any matter of dispute affecting the interest of said Local Union No. 327 or any of its members. In January, 1940, a representative of said Local Union No. 327 called upon the local manager of plaintiff at Nashville in regard to the discharge of an employee of plaintiff who was said to have been a member of said Union and plaintiff's said manager satisfactorily explained the reasons for said discharge which had nothing to do with Union membership. In the course of said conversation, said representative of Local Union No. 327, Mr. Clyde Anderson, told said local manager of plaintiff, Mr. C. G. Parsley, that the Union would insist on the signing of a closed shop contract by said company and Mr. Parsley thereupon gave Mr. Anderson the name and address of the president of plaintiff company, Mr. C. C. Brock of Bristol, Virginia, and told Mr. Anderson that he, (Parsley) had nothing to do with such matters and that the Union would have to take it up with Mr. Brock. Between this date in January, 1940, and the date of the picketing on July 11, 1940, said Local Union No. 327 did not write to or otherwise communicate with Mr. Brock.

3. That the pickets placed in front of plaintiff's place of business on the morning of July 11, 1940, were not placed there by said Local Union No. 327 because of any dispute with plaintiff of which plaintiff was advised or because of any dispute affecting the interest of plaintiff's employees, and that there was no strike of plaintiff's employees. Plaintiff had no notice of any complaints of any of its employees or of Local Union No. 327 over wages, hours or working conditions or of said Local Union's contention that it should be allowed to represent plaintiff's employees, and it had no notice that any of its employees had made application to said Union for membership. Two of the plaintiff's employees who drove pickup trucks in the City of Nashville went to work as usual that morning but later in the day were stopped by representatives of said Local Union No. 327 and directed to take the trucks in, and said employees complied with said directions because of fear of the consequences of failing or refusing to comply. These two men were invited to come to Bristol,

Virginia, the home office of plaintiff company, by Mr. Brock, the plaintiff's president, and after telling him that they were afraid to continue at work, they tendered their resignations in writing and said resignations were accepted in writing. One of these employees had made application for membership in the Union during the preceding year and the other early in the year 1940, but neither of them had paid initiation fees or had ever attended a meeting. A third pickup driver who was in the same situation and had similarly made application for membership quit work for a short time but returned and has continued at work since the picketing commenced. One over-the-road driver who helped drive a truck between Bristol, Virginia, and Nashville, Tennessee, quit work as a result of the picketing because he would not cross the picket line, but eight other over-the-road drivers, constituting all of the over-the-road drivers operating between Bristol, Virginia, and Nashville, Tennessee, continued at work and none of them were members of the Union or had applied for Union membership.

4. That certain employees of certain of the defendant companies are members of said Local Union 327 and as such were unwilling to handle freight on inter-change with plaintiff company after said pickets had been placed in front of plaintiff's place of business in Nashville, Tennessee, on July 11, 1940. It is a condition of the closed shop contracts, which said Union has with five of the defendant companies, that employees shall not be required to cross picket lines. The unwillingness of said employees to cross said picket line and to handle freight brought to Nashville by plaintiff company for delivery to connecting carriers and freight brought by said connecting carriers to Nashville for delivery to plaintiff company was one reason for the failure and refusal of defendant companies to inter-change freight with plaintiff company.

5. That the intervening defendants, the seven who are named and the class they represent, making a total of two hundred fifteen, are all members of Local Union No. 327, of the International Brotherhood of Teamsters, Chauffeurs, Stablemen and Helpers, and that they are the road drivers, city drivers, pickup and delivery men, dockmen, stewards, and dispatchers of the Hoover Truck Company, Malone Freight Lines, Johnson Freight Lines, Silver Fleet

392

Motor Express, Whitney Transfer Company, and Wilson Truck Company, six of the original defendants to this suit.

6. That the said Local Union No. 327 has contracts with the aforesaid six original defendant companies covering all the intervening employees, that said contracts are closed shop contracts, copies of which are filed as exhibits to the answer filed by the said intervening defendants.

The court therefore states the following conclusions of law:

■ 1. The Norris-La Guardia Act expressly limits the power of the United States courts to issue injunctions. The court cannot help but reach the conclusion that the passage of this act was for the purpose of, and did change the existing law at that time pertaining to the issuance of injunctions in labor disputes. The court must conclude, from the evidence and affidavits presented, and the facts found, that this case does involve and grows out of a labor dispute as defined by the terms and provisions of the Norris-La Guardia Act. Title 29, Secs. 101 to 115, inc., U.S.C.A.

2. It is apparent to the court that if the court should issue a mandatory injunction requiring the defendant companies, their agents, servants and employees, to deliver freight to and to accept freight from the plaintiff company, the practical effect of such injunction would be to make the defendants, who are members of the Labor Union in question, accept and deliver freight from and to plaintiff companies in violation or partial violation of their contract with said defendant companies and in direct conflict with the efforts of Local Union No. 327 to organize plaintiff's employees and require plaintiff to sign a closed shop contract with it.

3. The exceptions provided for the issuance of injunctions by the Norris-La Guardia Act are not present in this case, as there is no proof of any violence on the part of the Labor Union or any of its members or any dismissed employee, and no proof of any acts of lawlessness or threats thereof, as contemplated by Section 107 of the Act.

■ 4. The Norris-La Guardia Act, Title 29 U.S.C.A. § 101 et seq., does not carry any exception in favor of the Motor Carrier Act, Title 49 U.S.C.A. § 301 et seq., and this act does not suspend the Norris-La Guardia Act, nor does it vest this court with jurisdiction to issue injunctions in violation of the terms and provisions of the Norris-La Guardia Act, which expressly takes such jurisdiction from the court except in certain specific instances provided for.

It is, therefore, the opinion of the court that under the facts and circumstances hereinabove set out, plaintiff's application for a preliminary injunction should be denied, and the restraining order heretofore issued on July 27th, 1940, vacated. A decree will be entered accordingly.