**PETERSON v. MASTER PLUMBERS'
ASS'N et al.**

**No. 200.**

District Court, D. Nevada.

April 8, 1942.

As Amended April 16, 1942.

Bowen & Custer, of Reno, Nev., for plaintiff.

Lloyd V. Smith, of Reno, Nev., for United Ass'n of Plumbers and Steamfitters of Reno, Nev., Local Union 350.

Harlan L. Heward, of Reno, Nev., for Master Plumbers' Ass'n.

NORCROSS, District Judge.

Plaintiff's complaint prays for damages in the sum of $5,104.38, for a temporary and permanent injunction. Jurisdiction of this Court is based on the allegation that plaintiff is a resident and citizen of the State of California; that defendants are citizens and residents of the State of Nevada and that the amount in controversy exceeds the sum of $3,000. The complaint alleges that on August 6, 1941, a written agreement was entered into between the plaintiff and the Board of Regents of the University of Nevada for the construction of a gymnasium building, plaintiff to furnish all labor and materials for the sum of $250,440, plaintiff to commence work thereon and complete the same within one year; that plaintiff shortly thereafter purchased the heating and plumbing fixtures required for the sum of $21,272.50; that thereafter bids were let for the plumbing and heating work and that on or about October 1, 1941, plaintiff entered into a written agreement with W. E. Humes, as sub-contractor, for the installation of such plumbing and heating facilities for the sum of $7,000; that during all the times mentioned and for a long time prior thereto defendants, comprising the said Master Plumber's Association, and said Local Union 350, "have unlawfully combined, conspired, confederated and agreed together, * * * to force and compel all plumbing, heating and air conditioning contractors not members of said association and not defendants herein, to pay a certain tax, charge or tributation or exaction to the association * * * commonly called, referred to and known as a Sticker Fee; that in pursuance of said unlawful combination * * * said Association and said Union have made and entered into an agreement wherein * * * it is provided that a joint conference board * * * should and does have the power of supervision of the said industry, * * *; that further in pursuance of said unlawful combination * * * it is further agreed by and between defendant association and defendant union that each and every member of the Association, as well as all other plumbing, heating and air conditioning contractors not members of said defendant association, must pay to the association a sum of money equal to two (2%) per cent of the total cost price of plumbing, heating and air condition material and labor on any and all jobs which a Master Plumber undertakes, and that in addition thereto * * * pay * * * twenty five (25¢) cents for every fixture installed * * *; that in furtherance of said unlawful combination * * * the Association * * * agreed with said Union, * * * that in event any person, * * * engaged in the plumbing * * * business in Reno, * * * shall fail or refuse to pay said Sticker Fee as exacted, said union, * * * will and does cause and direct said union plumbers so employed to cease their work immediately, and for such time until said plumbing * * * contractor shall pay to said association the aforesaid Sticker Fee, * * * that on October 15, 1941, said Humes commenced the plumbing work on said University of Nevada Gymnasium and employed two members of said union; * * * that on or about Friday, December 12, 1941, the business agent for the union made demand * * * that said Humes pay to said Association the aforementioned Sticker Fee on or before December 15, 1941, and that in the event he fail

and refuse to pay said Sticker Fee the union plumbers would be called off the job; that said Humes acting upon the advice and direction of plaintiff, refused to pay said Sticker Fee so demanded; that pursuant to said unlawful agreement * * * the officers of said Union ordered the employees of Humes to cease their employment on said University Gymnasium, and, thereupon, on December 15, 1941, * * * employees of Humes * * * ceased their employment * * *; that on February 7, 1942, said Humes was informed by a member of said union that said Sticker Fee * * * would be $669.63; that plaintiff thereafter refused to pay said Sticker Fee * * *; * * * that plaintiff instructed and directed Humes to disregard any amount of any Sticker Fee in estimating and bidding the amount of his bid."

With respect to damages alleged in the complaint comprising eleven items totaling $5,104.38, it appears therefrom, that five thereof relate to alleged damages which will occur in the future totaling the sum of $2,560.66. The largest item of damage alleged as having occurred at the time of filing the complaint is the sum of $1,750, occasioned "by reason of the fact that lathers, plasterers, brickmasons and other building craftsmen have been delayed in the progress of their work."

Prior to the hearing of plaintiff's notice of application for issuance of a temporary injunction, answer was filed by the Master Plumbers' Association and certain of the persons named as defendants. The answer sets up two defenses, "First:" "The complaint fails to state a claim against these defendants upon which relief can be granted." The "Second Defense," consists of denials of allegations relied upon by plaintiff.

One of the principal contentions upon behalf of defendants is that a controlling question presented in this suit is that it involves a "labor dispute" and, hence, is controlled by the provisions of the Norris-LaGuardia Act, Chapter 6, Labor Title 29 U.S.C.A. §§ 101–115. In a suit involving a "labor dispute" the chapter deals with "definitions of, and limitations upon, the jurisdiction and authority of the courts of the United States," and provides that "no court of the United States shall have jurisdiction to issue a temporary or permanent injunction in any case involving or growing out of a labor dispute, as defined in sections 101–115 of this title, except after hearing * * * and except after findings of fact * * * to the effect—(a) That unlawful acts have been threatened and will be committed unless restrained or have been committed and will be continued unless restrained, * * *; (b) That substantial and irreparable injury to complainant's property will follow; * * * (d) That complainant has no adequate remedy at law; * * *.

A determination of the several questions of law, presented upon the hearing, involves the agreement entered into between the said Master Plumbers and said Local Union 350, respecting plumbing operations and contracts within and adjacent to the City of Reno, providing that a so called "Sticker Fee" shall be paid by any contractor for the installation of plumbing equipment, such fee to be in the amount of two per cent of the cost of such equipment and the installation thereof and in addition twenty-five cents for each separate and distinct installation. The agreement further provided that in case of bids being called for, all Master Plumbers, desiring to submit a bid, should enclose the same in a sealed envelope and deposit the same with a designated bank depository on or before a specified time so that all bids would become finally submitted at the same time. The testimony disclosed that the so called "Sticker Fee" derived its name from a requirement under the agreement that wherever plumbing or steam fitting material was being installed by plumbers there should be posted at the place where the work was being performed a statement that the fee had been paid, and, if not so posted, that members of the plumbers union were subject to be called off from the labor until such poster was supplied. The agreement provided that the proceeds of the "Sticker Fee" was to provide for the compensation, office and other expenses of a member of Local Union 350, chosen by a joint advisory committee of three each selected respectively by the Master Plumbers' Association and Local Union 350.

Testimony offered by defendants at the hearing was to the effect that the agreement was to the beneficial advantage not only to both Master Plumbers and members of the said Local Union but to the public in general in that it prevented contract "chiseling" which had the effect of not only imposing increased labor upon individual plumbers employed in installation but, also, resulting in defective or not first class

installation to the ultimate injury of the property owner, in that the contractor would endeavor to obtain a profit or reduce the amount of loss.

From the act, supra, is quoted the following: "§ 113. Definitions of terms and words used in chapter. When used in sections 101–115 of this title and for the purposes of such sections—

"(a) * * *

"(c) The term 'labor dispute' includes any controversy concerning terms or conditions of employment, or concerning the association or representation of persons in negotiating, fixing, maintaining, changing, or seeking to arrange terms or conditions of employment, regardless of whether or not the disputants stand in the proximate relation of employer and employee."

■ It is the conclusion of the court that we have here presented a "labor dispute" within the provisions of the said Norris-LaGuardia Act. Wagon Drivers' Union v. Lake Valley Farm Products, 311 U.S. 91, 61 S.Ct. 122, 85 L.Ed. 63; Columbia River Packers' Association v. Hinton, 315 U.S. 143, 62 S.Ct. 520, 86 L.Ed. ——, on appeal from decision, 9 Cir., 117 F.2d 310; New Negro Alliance v. Sanitary Grocery Co., 303 U.S. 552, 304 U.S. 542, 58 S.Ct. 703, 82 L.Ed. 1012.

■ From the evidence it does not appear that "unlawful acts have been threatened and will be committed unless restrained or have been committed and will be continued unless restrained." Mere ceasing and refusal to perform further labor for an employer because an employee or employees want or demand certain conditions to be complied with as a condition precedent, does not constitute "unlawful acts." Where such employee is or employees are members of a labor union and acquiesce in such a demand made by their union officials, the same rule would apply. Wilson & Co., v. Birl, 3 Cir., 105 F.2d 948.

■ Assuming a building contract to be "property" the mere ceasing of union skilled laborers to continue work of a particular character, unless certain conditions are complied with, would not constitute a "substantial and irreparable injury" unless compliance with such conditions would also constitute such an injury. Compliance with such conditions, in this case, called for a payment of $669.63. Compared to the amount involved in the building contract in question, $250,440.00, would be approximately .0021% thereof. Assuming such a payment, however, to meet the requirement of being "substantial," if it be, also, assumed the plaintiff's contention to be correct that demand of such payment was and is unlawful, then it does not appear that if such payment were made it would constitute an "irreparable injury," in that money unlawfully obtained is subject to recovery, hence, also, it does not appear "that complainant has no adequate remedy at law."

■ Assuming that this case does not present a "labor dispute" within the perview of the Norris-LaGuardia Act, then there is presented the question whether in a suit for damages growing out of an alleged unlawful combination or conspiracy, a temporary or permanent injunction may be issued, where no damages are alleged to have presently occurred in an amount to confer jurisdiction upon the court, or irreparable injury is shown to be threatened. The Circuit Court of Appeals of this Circuit, in United States v. Pan American Petroleum Co., 9 Cir., 55 F.2d 753, at page 778, stated the rule thus:

"Authorities are numerous on the proposition that, in a civil case of this nature, the abstract fraud and conspiracy are not the cause of action, but rather the overt acts done in furtherance of the fraudulent plan."

See, also, opinion of Judge Farrington of this court in Goldfield Consol. Mines Co. v. Goldfield M. U. No. 220, C.C., 159 F. 500, page 511, reading: "An injunction pendente lite should not usurp the place of a final decree neither should it reach out any further than is absolutely necessary to protect the rights and property of the petitioner from injuries which are not only irreparable, but which must be expected before the suit can be heard on its merits."

See, also, 32 C.J. 162, (§ 220); 15 C.J.S., Conspiracy, §§ 5, 6, p. 1000, § 12, p. 1014; Mox, Inc., v. Woods, 202 Cal. 675, 677, 262 P. 302.

It is the conclusion of the court that plaintiff's application for a temporary injunction should be, and is, denied.