## PACIFIC GAMBLE ROBINSON CO. v. MINNEAPOLIS & ST. LOUIS RY. CO. (JAECHE et al. Interveners).

### Civ. No. 3004.

United States District Court
D. Minnesota, Fourth Division.

June 20, 1949.

Perry R. Moore (of Stinchfield, Mackall, Crounse & Moore), of Minneapolis, Minnesota, for plaintiff.

C. W. Wright and Richard Musenbrock, of Minneapolis, Minnesota, for defendant.

Ira Karon and William C. Green, of St. Paul, Minnesota, and Harold C. Heiss and Russell B. Day, of Cleveland, Ohio, for interveners.

NORDBYE, Chief Judge.

On April 27, 1949, this Court issued a mandatory injunction against defendant carrier and its officers, agents, and employees, requiring them to perform their duties as a common carrier by rail for plaintiff. Plaintiff's business in Minneapolis was and still is strike-bound, and the interveners—defendant's employees—refuse to move goods by rail from plaintiff's premises because they contend they fear injury to themselves or their families from the strikers. At the hearing preceding the injunctive order, the applicability

of the Norris-La Guardia Act, 29 U.S.C.A. § 101 et seq., was not raised by the defendant railroad, which strongly opposed the order. The employees now have obtained counsel and, having been permitted to intervene in the proceeding, have moved that the mandatory injunction be vacated upon the ground that the Norris-La Guardia Act withdraws from this Court the jurisdiction to enter such an injunction.

Section 101 of 29 U.S.C.A. provides that no District Court of the United States "shall have jurisdiction to issue any restraining order or temporary or permanent injunction in a case involving or growing out of a labor dispute, except in a strict conformity with the provisions of * * *" the enumerated sections of the Norris-La Guardia Act.

Section 113 of 29 U.S.C.A. provides,

"(a) A case shall be held to involve or to grow out of a labor dispute when the case involves persons who are engaged in the same industry, trade, craft, or occupation; *or have direct or indirect interests therein;* or who are employees of the same employer; or who are members of the same or an affiliated organization of employers or employees; whether such dispute is (1) between one or more employers or associations of employers and one or more employees or association of employees; (2) between one or more employers or associations of employers and one or more employers or associations of employers; or (3) between one or more employees or associations of employees * * *; or when the case involves any conflicting or competing interests in a 'labor dispute' (as defined in this section) of 'persons participating or interested' therein (as defined in this section). (Italics supplied.)

"(b) A person or association shall be held to be a person participating or interested in. a labor dispute if relief is sought against him or it, and if he or it is engaged in the same industry, trade, craft, or occupation in which such dispute occurs, or has a direct or indirect interest therein, or is a member, officer, or agent of any association composed in whole or in part of employers or employees engaged in such industry, trade, craft, or occupation.

"(c) The term, 'labor dispute' includes any controversy concerning terms or conditions of employment, or concerning the association or representation of persons in negotiating, fixing, maintaining, changing, or seeking to arrange terms or conditions of employment, regardless of whether or not the disputants stand in the proximate relation of employer and employee."

Interveners contend that a "labor dispute" exists, and that this Court should not have granted the mandatory injunction against them. They do not indicate expressly between whom they contend the labor dispute exists. However, statements in their brief imply that they recognize it must exist between plaintiff and interveners. Because the Court's injunction of which interveners are seeking vacation runs in favor of plaintiff and against interveners and the defendant railroad, the labor dispute, if any, necessarily must exist between interveners and plaintiff. That the underlined portion of Section 113(a) is the only part of that paragraph applicable here seems clear. For Gamble-Robinson is not engaged in the railroad or switching business. And reference to Paragraph (b) of Section 113 establishes that the latter part of Paragraph (a) is inapplicable here. Interveners are not included within the group against whom plaintiff's employees are seeking relief.

The relevant part of Paragraph (a) requires that the persons involved in the controversy possess direct or indirect interests in the same industry, trade, craft, or occupation. The interest involved must be with respect to labor matters. For the matters over which the labor dispute must arise and concerning which the statute is operative, are labor matters. The purpose of the statute is to affect labor matters, not merely an interest in an industry, regardless of its relation to labor matters. Moreover, both parties must possess the required interest. Otherwise no relationship to a labor dispute would exist between the two.

In the instant case defendant's employees—interveners—have no interest in a labor sense in whether plaintiff's employees

strike or whether the objectives sought by the strike are attained. Interveners are not seeking to exercise any labor rights against plaintiff. They have no interest in plaintiff's labor policy as far as this matter is concerned. Their actions are not in support of the plaintiff's employees. They do not belong to the same union, nor do they have an agreement not to cross the picket lines of plaintiff's employee's union, as did the defendants in Southeastern Motor Lines v. Hoover Truck Co., D.C., 34 F. Supp. 390. No interest in plaintiff's labor policies has caused interveners to refuse to switch cars into the tracks where plaintiff's warehouse is located. Mere remote economic interest arising from the desirability of plaintiff's continued shipping over defendant railroad's lines cannot furnish the required interest. If it did, then no end to the conception of labor disputes with respect to common carriers could be drawn logically.

Interveners cite several cases in support of their position. New Negro Alliance v. Sanitary Grocery Co., 303 U.S. 552, 58 S. Ct 703, 82 L.Ed. 1012, does hold that an employer-employee relationship need not exist for a labor dispute. But there the interest of the Alliance concerning the labor policy of the grocery company was clear. They were interested in the grocery's labor policy of not employing colored persons. In Diamond Full Fashioned Hosiery Co. v. Leader, D.C., 20 F.Supp. 467, the defendant employees there were attempting to save their jobs. Their employer had sold its plant to the plaintiff company, which was moving it away. Peterson v. Master Plumbers Ass'n., D.C., 44 F.Supp. 908, also involved a situation in which the defendants had an interest in the labor policies of the plaintiff. Interveners place considerable reliance on Lee Way Motor Freight, Inc. v. Keystone Freight Lines, 10 Cir., 126 F.2d 931, where plaintiff sought to require defendant by injunction to handle its freight. But that case is plainly distinguishable on its facts. This clearly appears from the court's statement, 126 F.2d at page 933:

"Here a labor dispute arose between plaintiff and the local unions. Pickets were established around its docks. Defendants had existing contracts with the unions which provided that their employees should not be required to handle freight moving to or from an employer declared to be unfair, and that such employees should not be required to cross the picket line of a striking union. Pursuant to such contractual provision, the unions gave defendants notice of the declaration of unfairness and of the establishment of the pickets, and advised defendants that in the event the employees were required to handle freight moving to or from plaintiff they would be called out on strike. Disturbance of the relationship between defendants and their employees was threatened. A strike of such employees with the resulting injury to the businesses of defendants was in the immediate offing."

Interveners' counsel points out that difficulty between defendant railroad and interveners—its employees—is threatened. But the record does not justify this conclusion. For the M. & St. L. management frankly state that they believe their employees' (interveners') refusal to switch into the plaintiff's tracks is justified, and that no steps to discipline the employees have been taken. The record does not show any are anticipated. No dispute of any kind appears to exist between defendant railroad and these interveners or any other employees. The mere fact that the railroad formally requested the employees to do a switching operation which the employees refused to perform does not give rise to a dispute with the railroad, when instead of raising a question over the refusal, the road in effect acquiesces therein upon the belief that good grounds exist to justify the employees' refusals.

In view of these premises, therefore, the interveners' motion to vacate the injunction against them upon the ground that a "labor dispute" exists between them and plaintiff within the meaning of the Norris-La Guardia Act, 29 U.S.C.A. § 101 et seq., must be denied. It is so ordered. An exception is allowed.