The **LAKEFRONT DOCK AND RAILROAD TERMINAL COMPANY**, Plaintiff,

v.

**INTERNATIONAL LONGSHOREMEN'S ASSOCIATION**, William Bradley, President, Internat'l Longshoremen's Ass'n, Local No. 158, Internat'l Longshoremen's Association, Robert P. Velliquette, President, Internat'l Longshoremen's Ass'n, International Brotherhood of Electrical Workers of America, Local No. 8, Internat'l Brotherhood of Electrical Workers of America, John W. Holden, Business Manager, Local No. 8, Internat'l Brotherhood of Electrical Workers of America, The Toledo Lakefront Dock Company, Defendants.

No. 15018.

United States Court of Appeals
Sixth Circuit.

Aug. 17, 1962.

Victor G. Hanson, Detroit, Mich., Green & Green, Toledo, Ohio, for appellant—on memorandum in support of motion.

Doyle, Lewis & Warner, Toledo, Ohio, Alex L. Fricke and Grey K. Nelson, Cleveland, Ohio, for appellee—on answer brief.

Before CECIL, WEICK and O'SULLIVAN, Circuit Judges.

## O'SULLIVAN, Circuit Judge.

This matter is before us on the motion of International Longshoremen's Association, one of the parties defendant, to suspend, pending hearing of its appeal, a preliminary injunction heretofore granted by the United States District Court at Toledo, Ohio. By such preliminary injunction, appellant, with others, was, in substance, enjoined from continuing a work stoppage involving the refusal of its members to work on vessels of a Canadian lake carrier, Upper Lakes Shipping, Ltd., while members of Canadian unions picketed such vessels.[1]

Plaintiff, The Lakefront Dock and Railroad Terminal Company, is jointly owned and controlled by the Baltimore and Ohio and the New York Central railroads. It operates docks on Lake Erie at Oregon, Ohio. It is a lake terminal facility for the railroads mentioned and is a part of the Port of Toledo. The railroads deliver coal and other bulk materials to it for transfer into lake vessels. Ore and other materials are likewise transferred to railroad cars from lake vessels. Plaintiff is a common carrier, subject to the orders and regulations of the Interstate Commerce Commission. Its rates are charged pursuant to tariffs filed by it and other connecting rail carriers with such Commission. Plaintiff's agent, Toledo Lakefront Dock Company (a defendant, but not an appellant), is a stevedore company whose employees handle all of the loading and unloading of lake vessels at plaintiff's dock. Work done at plaintiff's dock is a part of the interstate transportation carried on by the American railroads. Plaintiff's premises occupy about 212 acres, upon which are located 65 miles of track, with a capacity for 5,800 railroad cars. These tracks terminate on three piers, two of which

1. The defendants were enjoined: "* * * from the doing of anything or the failure to do anything which will in any way interfere with the operation of plaintiff's coal handling machines for the transferring of coal products to and from lake vessels at the piers of the facilities of plaintiff, and in any way inhibiting or preventing the plaintiff from fulfilling its obligations under the Interstate Commerce Act, and more specifically but not exclusively,

"(a) from permitting or in any way participating in any work stoppage such as the abandonment of work in the loading of vessels at the facilities of the plaintiff, including the honoring of any picket lines of Seafarers' International Union of Canada or of North

America Marine Engineers Benevolent Association and any other unions; and

"(b) from preventing the free flow of commerce through the facilities of plaintiff to and from lake carriers and vessels particularly those owned or operated by Upper Lakes Shipping Ltd."

Appellant urges that the restraints of the preliminary injunction extend to conduct unrelated to the issues involved. Such may be true, but it does not appear that it has been employed to interfere with activities not immediately involving the vessels of Upper Lakes Shipping, Ltd. If such should occur, relief would be available upon a motion to modify the injunction, addressed to the District Court (Rule 65(b), F.R.Civ.P.).

mount three machines for the dumping of coal from railroad cars into lake vessels and one of which mounts four machines for unloading ore from lake vessels. The handling by the New York Central and the B. & O. of freight to and from vessels operating in the Great Lakes is carried on by plaintiff's facilities.

The employees of defendant stevedore company, 195 stevedores and 22 electricians, are members of Local No. 158, International Longshoremen's Association, and Local No. 8 of International Brotherhood of Electrical Workers of America, respectively. Appellant Longshoremen's Association does not dispute plaintiff's assertion that all of the above workmen are, in their relationship with their employer, the Toledo Lakefront Dock Company (the stevedore company), governed by the Railway Labor Act (Title 45 U.S.C.A. § 151 et seq.).

The instant litigation was precipitated by the appearance at defendant's dock of pickets whose placards identified them as members of Seafarers' International Union of Canada and Marine Engineers' Benevolent Association (both apparently Canadian labor organizations). This picketing was occasioned by the arrival at plaintiff's dock of the S.S. Red Wing, a vessel of Upper Lakes Shipping, Ltd. This vessel was taking on a cargo of coal brought to the dock by the railroads for transhipment by water to Dominion Foundries and Steel, Ltd., at Hamilton, Ontario. The coal had been purchased from mines in Virginia and West Virginia. The pickets' signs read, "Locked Out—S. I. U. of Canada by S. S. Red Wing. We have no dispute with any other employer," and "S.S. Red Wing hired nonunion engineers, mates, at substandard conditions, Dist. 2, M. E. B. A., AFL-CIO." Another vessel of the Upper Lakes Shipping, Ltd., the S.S. Northern Venture, was, while at plaintiff's dock, picketed with signs reading "IBU AFL-CIO protests lock-out of S I U of Canada by Upper Lakes Shipping."

For a time, the stevedores worked on the S.S. Red Wing notwithstanding the presence of the Canadian pickets. Shortly, however, upon telegraphic advice from the President of International Longshoremen's Association, officers of the union's local which represented employees of the Toledo Lakefront Dock Company (stevedore company) announced that such employees would not cross the aforesaid picket lines and would refuse to serve any of the boats of Upper Lakes Shipping, Ltd. It is that conduct which was forbidden by the preliminary injunction here involved. Eight defendants were thus enjoined, including the International Longshoremen's Association, the International Brotherhood of Electrical Workers of America and their respective locals, individually named officials of such groups, and the Toledo Lakefront Dock Company. Appeal from the order granting the preliminary injunction has been taken only by International Longshoremen's Association (presumably the parent union). The notice of appeal avers that the appeal is taken as an emergency appeal pursuant to § 110 of Title 29 U.S.C.A. The matter is, however, presented to us at this time as a motion to suspend the preliminary injunction, "pending the hearing and determining of defendant's appeal." We hear it, therefore, as such motion and consider only the memoranda filed in support and in opposition thereto.

From the papers before us, it appears that the coal lading of a vessel such as the S.S. Red Wing (approximately 25,000 tons) produces about $5,000.00 in revenue to plaintiff and about $90,000.00 revenue for the railroads. On the basis of the 1961 shipping season (April through November) and commitments for 1962, it was estimated that approximately 1,000,000 tons of coal purchased at the mines will, in the 1962 season, barring any work stoppage, be transhipped from plaintiff's docks in vessels of Upper Lakes Shipping, Ltd., to the Dominion Foundries and Steel, Ltd., its consignee at Hamilton, Ontario.

Analysis of appellant's memoranda supporting its motion discloses that the

following points are presented for our consideration:

(1) That suspension of the preliminary injunction will not inflict irreparable injury on plaintiff, but that its continuance will inflict irreparable damage on appellant;

(2) That the preliminary injunction is proscribed by the Norris-LaGuardia Act (Title 29 U.S.C.A. § 101 et seq.); and

(3) That the controversy exposed by the pleadings involves charges of unfair labor practices by the union under Sec. 8(b) (4) (i) and 8(b) (4) (ii) of the Labor Management Relations Act (Title 29 U.S.C.A. § 158), and primary and exclusive jurisdiction thereof belongs to the National Labor Relations Board.

(1) *Irreparable Damage.*

■ On this address to our equitable discretion, we consider whether there is an imbalance in the injuries that would accrue to the opposing parties from a suspension on the one hand or a continuance on the other, of the preliminary injunction. It is clear from the undisputed recitals in the plaintiff's memorandum that inability of the plaintiff and the railroads to handle the tonnage of coal to the Dominion Foundries during the present navigation season may involve substantial loss of revenue. It is not certain what claims may be made upon plaintiff and the railroads who depend on its services, should they be unable to deliver tonnage which they are required as a common carrier to deliver "upon reasonable request therefor" (Title 49, § 1 ¶ (4), U.S.C.A.). Work stoppages have been held not to excuse a common carrier's failure to make such deliveries. Montgomery Ward & Co. v. Northern Pacific Terminal Company, et al., D.C., 128 F.Supp. 475; Minneapolis & St. Louis Ry. Co. v. Pacific Gamble Robinson Co., 8 Cir., 215 F.2d 126, 132. Without a full hearing upon which the facts and rules binding a common carrier can be fully explored, we cannot adequately appraise the claims that might be asserted against plaintiff and the railroads for their failure to fulfill their duties as carriers. It is sufficient here to observe that inability to complete deliveries to vessels of the Upper Lakes Shipping, Ltd., could result in substantial and irreparable injury to plaintiff.

Conversely, the papers before us disclose no facts supportive of a claim that injury will ensue to defendant if the preliminary injunction remains in force. The International Longshoremen's Association claims no interest in whatever controversy may exist between Upper Lakes Shipping, Ltd., and the persons who picketed its boats at the plaintiff's dock. In fact, the nature of such controversy, except as we are informed by the signs carried by the Canadian pickets, is not disclosed. There is no claim that the defendant union is in any way affiliated with the unions identified by the pickets' signs; it does not appear that the members of the Longshoremen's local are engaged in the same trade, craft or occupation as the members of whatever Canadian unions, if any, may be involved in the picketing. In short, we are informed of no interest of the employees of the stevedore company that would directly or indirectly be served by refusing to load the vessels of Upper Lakes Shipping, Ltd.

It is suggested that loss to plaintiff could be avoided if the Dominion Foundries & Steel, Ltd., would select other lake carriers than Upper Lakes Shipping, Ltd., to have its coal transhipped for the rail terminal at defendant's dock. It is sufficient to say that plaintiff, as a common carrier, would have no right to dictate to the Canadian consignee what vessels it must have its coal shipped in.

■ Appellant urges that the injunction involved is being employed "to break a strike." If that were true, we might, indeed, be inclined to suspend the preliminary injunction. The facts before us, however, do not support a claim that there is any strike involved, nor any objective of the Longshoremen which can or will be frustrated by the continuance of the preliminary injunction. Since the motion before us is addressed

to our discretion, Scripps Howard Radio v. Federal Communications Commission, 316 U.S. 4, 10, 11, 62 S.Ct. 875, 86 L.Ed. 1229; Virginian Railway Company v. United States, 272 U.S. 658, 672, 673, 47 S.Ct. 222, 71 L.Ed. 463; In re Haberman Manufacturing Co., 147 U.S. 525, 13 S.Ct. 527, 37 L.Ed. 266; Vacuum Oil Co. v. Grabler Mfg. Co., 53 F.2d 975, 976 (C.A. 6, 1931), we decline to exercise it in favor of appellant on the facts shown here.

Accordingly, there are no equitable grounds urging the exercise of our discretion to grant appellant's motion. Unless the District Court was without jurisdiction to issue the preliminary injunction, we will not now suspend it.

(2) *Norris-LaGuardia Act.*

Appellant says that the Norris-LaGuardia Act forbids the District Court's action. We disagree. The Norris-LaGuardia Act (29 U.S.C.A. § 101 et seq.) in § 101 proscribes the issuance of such an injunction as we are dealing with "in a case involving or growing out of a labor dispute * * *." In § 113, it is provided "a case shall be held to involve or to grow out of a labor dispute when the case involves persons who are engaged in the same industry, trade, craft, or occupation; or have direct or indirect interests therein; or who are employees of the same employer; or who are members of the same or an affiliated organization of employers or employees * * *." We are unable to fit the events which are the background to this case into the above definition of a labor dispute.

Appellant has not, on this motion, challenged plaintiff's assertion that the employees of the Toledo Lakefront Dock Company are subject to the Railway Labor Act (Title 45 U.S.C.A. § 151 et seq.). If so, "major" or "minor" disputes between them and their employer or other carriers would be initially handled by agencies created to enforce the policy of the Railway Labor Act which is "To avoid any interruption to commerce or to the operation of any carrier engaged therein" (45 U.S.C.A. § 151a). In this case, there are no "major" or "minor" disputes between the appellant Longshoremen's Association and any employer or carrier.

Without extended discussion, we believe this Court's decision in Brotherhood of Railway Trainmen et al. v. New York Central R. R. Co., 246 F.2d 114 (C.A. 6, 1957) supports the District Judge's holding that the Norris-LaGuardia Act did not forbid the issuance of the preliminary injunction. This Court there said:

> "Here we are confronted by neither a major nor a minor dispute, within the meaning of the Railway Labor Act, nor any labor dispute within the meaning of either the Railway Labor Act or the Norris-LaGuardia Act. Since, in the instant case, there is no labor dispute involved, neither the Railway Labor Act nor the Norris-LaGuardia Act are applicable."

Precedent, although not factually identical, for the District Court's action in this case is also found in several District Court decisions. Pacific Gamble Robinson Co. v. Minnesota and St. Louis Railroad Company, D.C., 85 F.Supp. 65; Erie Railroad Company v. Local 1286, I. L. A., D.C., 117 F.Supp. 157; Illinois Central Railroad Company v. International Brotherhood of Teamsters, D.C., 90 F.Supp. 640.

(3) *Preemption by N. L. R. B.*

Defendant-appellant urges that the subject matter of this litigation is arguably of such nature that its handling should be committed to the N. L. R. B. It is asserted that the alleged conduct of defendants, employees of the stevedore company, and their union amounts to unfair labor practices within the meaning of Sec. 8(b) (4) (i) and 8(b) (4) (ii) of the Labor Management Relations Act (Title 29 U.S.C.A. § 158). Reliance for this is placed chiefly upon San Diego Building Trades Council Millmen's Union, Local 2020 v. J. S. Garmon, 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775, and Marine Engineers Beneficial Asso-

**554**

ciation v. Interlake Steamship Company, 370 U.S. 173, 82 S.Ct. 1237, 8 L.Ed.2d 418 (1962) and cases therein discussed. We are unable to find an analogy between those cases and the one before us.

Wholly apart from considerations of the impact of the Railway Labor Act on the controversy involved, we cannot find that the conduct enjoined can be looked upon as an unfair labor practice within § 8(b) (4) (i) or (ii). The conduct described in such sections is forbidden where "an object thereof is" the accomplishment of one of the purposes set forth in subsections (A) (B) (C) and (D) [2] of § 8(b) (4) (i) and (ii).

The plaintiff here is not seeking to control the activities of the Canadian pickets. Whether their conduct or motives would subject them to a charge of an unfair labor practice is not a question before us. The refusal of the employees of the stevedore company to continue dumping coal into the vessels S.S. Red Wing and S.S. Northern Venture was as a consequence of advice by the heads of their unions that they would respect the picket lines of the Canadian pickets. Certainly such conduct did not have for its purpose the serving of any of the objectives defined in the subsections of Sec. 8(b) (4) (i) and (ii). Nowhere does appellant advise us as to what objectives it sought to further by the work stoppage involved. The president of the Longshoremen did announce to the

officials of the Toledo Lakefront Dock Company that its employees were in fear of violence. The motion and papers before us indicate that there was no showing at the hearing in the District Court that there were any such fears and the point is not relied on in this motion.

From what has been shown us on the motion before us, we are not persuaded that the District Court was without jurisdiction because such was preempted by the N. L. R. B. An order will be entered denying the motion.

---

2. "(A) forcing or requiring any employer or self-employed person to join any labor or employer organization or to enter into any agreement which is prohibited by subsection (e) of this section;

"(B) forcing or requiring any person to cease using, selling, handling, transporting, or otherwise dealing in the products of any other producer, processor, or manufacturer, or to cease doing business with any other person, or forcing or requiring any other employer to recognize or bargain with a labor organization as the representative of his employees unless such labor organization has been certified as the representative of such employees under the provisions of section 159 of this title: *Provided*, That nothing contained in this clause (B) shall be construed to make unlawful, where not otherwise un-

lawful, any primary strike or primary picketing;

"(C) forcing or requiring any employer to recognize or bargain with a particular labor organization as the representative of his employees if another labor organization has been certified as the representative of such employees under the provisions of section 159 of this title;

"(D) forcing or requiring any employer to assign particular work to employees in a particular labor organization or in a particular trade, craft, or class rather than to employees in another labor organization or in another trade, craft, or class, unless such employer is failing to conform to an order or certification of the Board determining the bargaining representative for employees performing such work."